UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RANDY HETRICK and CINDY HETRICK,**

    **Plaintiffs,**

v.                                                                              Case No. 8:07-cv-871-T-30TBM

**IDEAL IMAGE DEVELOPMENT CORPORATION,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint and Supporting Memorandum of Law (Dkt. #26), and Plaintiffs' Opposition to Defendant's Motion to Dismiss Second Amended Complaint (Dkt. #29). The Court, having considered the motion, response, and being otherwise advised in the premises, concludes that Defendant's motion should be granted as stated herein.

### Background.

In Plaintiffs' Second Amended Complaint (Dkt. #25), Plaintiffs bring four (4) causes of action against Defendant alleging: Count I - Violation of the Florida Franchise Act; Count II - Violation of the Florida Deceptive and Unfair Trade Practices Act; Count III - Fraudulent Inducement; and Count IV - Negligent Misrepresentation. In support of Defendant's motion to dismiss, Defendant argues, in pertinent part, that: Plaintiffs lack standing in their individual capacities to sue Defendant for the claims stated in the Second Amended

Complaint, since the franchise was established in the name of a corporation; Plaintiffs lack standing to sue under the Florida Franchise Act because they are "not doing business in Florida"; Plaintiffs fail to state a cause of action under the Florida Deceptive and Unfair Trade Practices Act because they have not alleged that they are "consumers" who have suffered "actual damages" under the FTC Franchise Rule; and Plaintiffs fail to state any common law claim because the have not alleged an injury distinct from that suffered by the corporate franchise.

## Plaintiffs' Allegations.

Plaintiffs, Randy and Cindy Hetrick, husband and wife (together, "Plaintiffs") seek to bring this action in their individual capacities. Plaintiffs are the sole shareholders of the corporate franchisee, CIRA Corp., an Alabama corporation ("Cira"). The allegations in the Second Amended Complaint concern business negotiations by and between Plaintiffs and Defendant Ideal Image Development Corporation, the franchiser ("Ideal Image") relating to the establishment of a franchise agreement by and between Cira and Ideal Image. Cira is not a party to this action.

Plaintiffs are residents of Alabama. Ideal Image is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Hillsborough County, Florida. Ideal Image offers franchises for retail centers that provide laser services for cosmetic procedures and other related services.

On or about February 13, 2004, Plaintiffs called Ideal Image to discuss the franchise opportunity offered by Ideal Image. During the telephone conversation, Ideal Image

represented to Plaintiffs that in December 2003, the Tampa Ideal Image Center had approximately $350,000 in sales and $150,000 in expenses. Ideal Image then invited Plaintiffs to come to Tampa for an in-person meeting to discuss the possibility of purchasing a franchise.

On or about February 25, 2004, Plaintiffs traveled to Tampa for their first meeting with Ideal Image regarding the franchise opportunity. On February 27, 2004, Plaintiffs met with Ideal Image again in Tampa at which time, according to Plaintiffs, Ideal Image represented to Plaintiffs that in January 2004, the Tampa Ideal Image Center had approximately $380,000 in sales and $160,000 in expenses. At the same meeting, Ideal Image further represented to Plaintiffs that Plaintiffs would earn two to three times this amount if Plaintiffs opened an Ideal Image Center in Atlanta, Georgia. Ideal Image provided Plaintiffs with a copy of its Uniform Franchise Offering Circular (the "UFOC").[1] Plaintiffs claim that the UFOC contained inaccurate representations regarding the total investment required to open an Ideal Image center and the training and support Ideal Image would provide.

On or about March 17, 2004, and March 30, 2004, Plaintiffs again met with Ideal Image in Tampa to discuss the establishment of the proposed franchise relationship, whereby Plaintiffs intended to individually purchase the rights to establish and operate an Ideal Image Center in Atlanta. During the March 17th meeting, Plaintiffs claim that Ideal Image

---

[1] *See* Dkt. #25-2.

represented to them that the Sarasota Ideal Image Center was going to make approximately $100,000 in its first month of operation and that Plaintiffs would earn two to three times this amount if they opened an Ideal Image in Atlanta, because Ideal Image told them that Atlanta was the "best market on the east coast and maybe the country" for an Ideal Image center. During the March 30th meeting, Plaintiffs claim that Ideal Image represented to Plaintiffs that the Sarasota Ideal Image Center made approximately $110,000 in sales its first month and approximately $50,000 in profits and told Plaintiffs they would earn at least double this amount if they opened an Ideal Image in Atlanta.

Plaintiffs allege that at the time of making numerous unauthorized earnings claims to Plaintiffs, Ideal Image did not have a reasonable basis for the representations nor did it disclose documents or information required by the FTC Franchise Rule. Further, Plaintiffs allege that Ideal Image misrepresented the required total investment needed to establish and operate an Ideal Image Center (Plaintiffs claim that the actual investment required was approximately 300% more than Ideal Image's representations).

Prior to entering into a franchise agreement, Ideal Image required Plaintiffs to form a separate corporate entity to operate the proposed franchise. Thus, Plaintiffs formed Cira. On March 30, 2004, Cira and Ideal Image entered into an Ideal Image Development Corporation Franchise Agreement (the "Franchise Agreement").[2] Cira was formally incorporated with the Alabama Secretary on or about April 1, 2004. Also on March 30,

---

[2] Dkt. #25-6.

2004, Plaintiffs, jointly and individually, signed a Guaranty Agreement in favor of Ideal Image, personally guaranteeing all of Cira's obligations as set forth in the Franchise Agreement (the "Guaranty Agreement").

Plaintiffs paid $170,000 from their individual funds to Ideal Image between March 30, 2004 and April 7, 2004. Plaintiffs allege that they would not have paid their personal funds directly to Ideal Image, formed and funded Cira, or signed personally guarantees, if Ideal Image had not made misrepresentations to them regarding the success of other Ideal Image centers or the potential of the Atlanta market.

## Motion to Dismiss Standard Under 12(b)(6).

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief may be granted. *Sea*

*Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Discussion.

**I.   Plaintiffs' standing to assert claims under the Florida Franchise Act and Florida Deceptive and Unfair Trade Practices Act.**

Ideal Image asserts that Plaintiffs' claims under the Florida Franchise Act ("FFA"), Fla. Stat. §817.416, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.203, must be dismissed because Plaintiffs have not alleged a direct injury distinct from that suffered by Cira.

**A.   Florida Franchise Act.**

Plaintiffs argue that they are a "person" who "invested" in a franchise and thus may recover individually under the FFA pursuant to Fla. Stat. §817.416(3). This argument, however, was specifically considered and rejected by the Florida's Second District Court of Appeal in *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So.2d 941 (Fla. 2d DCA 2001). In *Checkers*, the sole shareholder in a franchise corporation argued that he was a "person" who "invested" in a franchise and thus he could recover individually under the FFA. *See Checkers*, 805 So.2d at 944. The appellate court disagreed

with the shareholder's argument and ruled that the "person who invested" in the franchise was the franchise corporation, not the shareholder. *Id*. In explanation, the appellate court reasoned:

> The violations of the Florida Franchise Act caused a direct injury to Tampa Checkmate [the franchise corporation]. In contracts, any injury to Mr. Gagne [the shareholder] was an indirect injury suffered by him as a shareholder who invested in the corporation, Tampa Checkmate. As a result, Mr. Gagne does not have standing as an individual to recover his investment in Tampa Checkmate. *See Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978).[3]

Plaintiffs argue that the appellate court's ruling in *Checkers* should not apply to the facts of this case, because in *Checkers* the franchise corporation was already in existence at the time of the alleged misrepresentations. Such argument, however, is inconsequential to this Court's analysis under the FFA. Rather, the Court must examine which "individual, partnership, corporation, association, or other entity" was injured by the alleged violations of the FFA. *See* Fla. Stat. §817.416(1)(a).

The obvious place to start is with the Franchise Agreement[4] at issue. The Franchise Agreement was entered into by and between Ideal Image and Cira. The violations alleged in the Second Amended Complaint under the Florida Franchise Act potentially allege a direct injury to Cira. Cira, however, is not a party to this lawsuit.[5] Any injury to Plaintiffs, as a result of alleged violations by Ideal Image under the FFA, would be an indirect injury

---

[3] *Checkers* at 944.

[4] Dkt. #25-6.

[5] It appears that Cira would be an indispensable party to actions relating to the Franchise Agreement.

suffered by them as shareholders who invested in the corporate franchise, Cira.[6] As a result, Plaintiffs, individually, do not have standing to recover their investment in Cira under the FFA. Accordingly, Count I of the Second Amended Complaint is dismissed with prejudice.

### B.      Florida Deceptive and Unfair Trade Practices Act.

Plaintiffs argue that Ideal Image violated Fla. Stat. §501.203(3) by violating the Federal Trade Commission Franchise Rule, 16 C.F.R. 436.1, *et seq.*, since it is a violation of the FDUTPA to violate any rule promulgated under the FTC Act. *See* §501.203(3), Florida Statutes. For the reasons stated above, the Court concludes that the violations alleged in the Second Amended Complaint under the FDUTPA potentially allege a direct injury to Cira. Again, any injury to Plaintiffs would be an indirect injury suffered by them as shareholders who invested in the corporate franchise. As a result, Plaintiffs, individually, do not have standing to recover their investment in Cira under the FDUTPA. Accordingly, Count II of the Second Amended Complaint is dismissed with prejudice.

### II.    Plaintiffs' standing to assert claims under common law theories of fraudulent inducement and negligent misrepresentation.

Defendant argues that Plaintiffs fail to state a claim under common law, because they fail to allege an injury distinct from that suffered by the corporate franchisee. In opposition, Plaintiffs argue that they have standing to sue for misrepresentations made to them in their individual capacities before Cira was formed.

---

[6] The Court's conclusion would differ if Plaintiffs had signed the Franchise Agreement in their individual capacities.

Upon a review of the allegations incorporated within Plaintiffs' Second Amended Complaint, the Court concludes that Plaintiffs fail to allege an injury that is distinct from that suffered by Cira. The Court agrees that Plaintiffs may assert common law claims for fraudulent inducement or negligent misrepresentation, however, Plaintiffs must allege an injury that is distinct from those suffered by Cira. Accordingly, Counts III and IV are dismissed without prejudice with leave to amend.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint and Supporting Memorandum of Law (Dkt. #26) is GRANTED as stated herein. Counts I and II of the Second Amended Complaint are dismissed with prejudice. Counts III and IV of the Second Amended Complaint are dismissed without prejudice with leave to amend.

2. Plaintiffs' Second Amended Complaint is dismissed without prejudice with leave to amend. Plaintiffs may file an amended complaint within thirty (30) days of the entry of this Order.

**DONE** and **ORDERED** in Tampa, Florida on January 24, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2007\07-cv-871.mtd 26.wpd