**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CIRA CORP., a foreign corporation,**
**RANDY HETRICK, individually, and**
**CINDY HETRICK, individually,**

      **Plaintiffs,**

**vs.**                                        **CASE NO.  8:07-cv-00871-JSM-TBM**

**IDEAL IMAGE DEVELOPMENT**
**CORPORATION, a Florida corporation,**

      **Defendant.**
_____/

**THIRD AMENDED COMPLAINT**

Plaintiffs, CIRA CORP., RANDY HETRICK and CINDY HETRICK, file this Third Amended Complaint against Defendant IDEAL IMAGE DEVELOPMENT CORPORATION and allege as follows:

1. The plaintiff, CIRA Corp. ("CIRA"), is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Tuscaloosa, Alabama.

2. Plaintiffs, Randy Hetrick and Cindy Hetrick ("HETRICKS"), are individuals, husband and wife, currently residing in the State of Alabama.

3.   Defendant, Ideal Image Development Corporation ("IDEAL IMAGE"), is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Hillsborough County, Florida.

4.   All conditions precedent to the institution and maintenance of this action have been performed or have occurred.

### GENERAL ALLEGATIONS

5.   IDEAL IMAGE offers franchises for retail centers that provide laser services for cosmetic procedures and other related services under the trade name "Ideal Image." ("IDEAL IMAGE Center").

6.   On or about February 13, 2004, HETRICKS called IDEAL IMAGE's office in Tampa, Florida to discuss the franchise opportunity offered by IDEAL IMAGE.    During the conversation, IDEAL IMAGE represented to HETRICKS that in December, 2003, the IDEAL IMAGE Center in Tampa, Florida ("Tampa") had approximately $350,000 in sales and $150,000 in expenses.

7.   In the same conversation on February 13, 2004, IDEAL IMAGE asked HETRICKS to come to Tampa for an in-person meeting to discuss the possibility of HETRICKS purchasing a franchise.

8.   On or about February 25, 2004, HETRICKS traveled to Tampa for the first face-to-face meeting with IDEAL IMAGE regarding the franchise opportunity.

9.   On February 27, 2004, HETRICKS met with IDEAL IMAGE again in Tampa. During this meeting, IDEAL IMAGE represented to HETRICKS that in January, 2004, the Tampa IDEAL IMAGE Center had approximately $380,000 in sales and $160,000 in expenses. At the same meeting, IDEAL IMAGE further represented to HETRICKS that HETRICKS would

earn two to three times this amount if HETRICKS opened an IDEAL IMAGE Center in Atlanta, Georgia ("Atlanta").

10. At the February 27, 2004 meeting in Tampa, IDEAL IMAGE provided HETRICKS with a copy of its Uniform Franchise Offering Circular ("UFOC"), a copy of which is attached as Exhibit A.  Unbeknownst to HETRICKS, the UFOC failed to completely and accurately disclose, by omission or misrepresentation, information required to be disclosed in the UFOC.  Without limiting the foregoing, Item 7 of the UFOC contained inaccurate representations regarding the total investment required to open an IDEAL IMAGE center and Item 11 of the UFOC contained inaccurate representations regarding the training and support IDEAL IMAGE would provide.

11. Further, Item 19 of the UFOC mistakenly states that IDEAL IMAGE does "not furnish or authorize its salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an IDEAL IMAGE Center."  This statement was false, and known by IDEAL IMAGE to be false, because in connection with the marketing and offering of IDEAL IMAGE Centers prior to April 2, 2004, IDEAL IMAGE made earnings claims to HETRICKS within the meaning of 16 C.F.R. Part 436.1, *et. al.* (1979) (the "FTC Franchise Rule").  Without limitation, IDEAL IMAGE made earnings claims to HETRICKS on February 13 and 27, 2004 and March 17 and 30, 2004.  In making the earnings claims, IDEAL IMAGE failed to comply with the FTC Franchise Rule.

12. At the time the earnings claims were made, HETRICKS did not know the earnings claims were being made in violation of Sections 436.1(b)-(e) of the FTC Franchise Rule and Section 5 of the Federal Trade Commission Act, 15 U.S.C. §5(a).

13. On or about March 17, 2004 and March 30, 2004, HETRICKS met with IDEAL IMAGE again in Tampa to further discuss the establishment of the proposed franchise relationship, whereby HETRICKS, individually, would purchase the rights to establish and operate an IDEAL IMAGE Center in Atlanta.

14. During the March 17, 2004 meeting, IDEAL IMAGE represented to HETRICKS that the Sarasota, Florida ("Sarasota") IDEAL IMAGE Center was going to make approximately $100,000 in its first month of operation and that HETRICKS would earn two to three times this amount if they opened an IDEAL IMAGE Center in Atlanta because Atlanta was the "best market on the east cost and maybe the country" for an IDEAL IMAGE center.

15. During the March 30, 2004 meeting, IDEAL IMAGE represented to HETRICKS that the Sarasota IDEAL IMAGE Center made approximately $110,000 in sales its first month and approximately $50,000 in profits and HETRICKS would earn at least double this amount if they opened an IDEAL IMAGE Center in Atlanta.

16. At the time of making the unauthorized earnings claims, IDEAL IMAGE did not have a reasonable basis for the representations nor did it disclose HETRICKS with the documents and information required by the FTC Franchise Rule.

17. In addition to the in-person meetings in Tampa, HETRICKS also had telephone conversations with IDEAL IMAGE in Tampa regarding the proposed franchise relationship whereby HETRICKS, individually, would purchase the rights to establish and operate an IDEAL IMAGE franchise.

18. During the discussions between IDEAL IMAGE and HETRICKS, IDEAL IMAGE intentionally misrepresented to HETRICKS by failure to disclose or otherwise, the

required total investment to establish and operate an IDEAL IMAGE Center such that the actual investment required was approximately 300% more than IDEAL IMAGE's representations.

19. During the discussions between IDEAL IMAGE and HETRICKS in February and March of 2004, IDEAL IMAGE also intentionally misrepresented the revenue and prospects for success that HETRICKS could expect if they opened an IDEAL IMAGE Center in Atlanta.

20. After IDEAL IMAGE made the foregoing misrepresentations, omitted material facts and after IDEAL IMAGE induced plaintiffs to pay over their personal funds directly to IDEAL IMAGE, IDEAL IMAGE insisted that plaintiffs form a corporation to operate the proposed franchise. The corporation, known as CIRA Corporation ("CIRA"), came into being on April 2, 2004, after IDEAL IMAGE's misrepresentations to the HETRICKS and after the franchise agreement was signed. A copy of the Franchise Agreement that was signed on March 30, 2004, is attached as Exhibit B.

21. Because CIRA did not come into existence until April 2, 2004, CIRA did not exist at the time IDEAL IMAGE made the misrepresentations to HETRICKS in February and March of 2004 regarding the proposed franchise.

### COUNT I
### VIOLATION OF FLORIDA'S FRANCHISE ACT
#### (CIRA)

22. Paragraphs 1 through 21 are realleged and incorporated by reference.

23. This is an action by CIRA against IDEAL IMAGE for violation of Florida's Franchise Act.

24. IDEAL IMAGE is a franchisor, within the meaning of Section 817.416, Florida Statutes.

25. The Franchise Agreement and Guaranty Agreement were signed on March 30, 2004. In selling and establishing the franchise, IDEAL IMAGE violated Section 817.416(2)(a), Florida Statutes.

26. IDEAL IMAGE intentionally misrepresented to HETRICKS and CIRA the prospects or chances for success regarding the proposed franchise and intentionally misrepresented to HETRICKS and CIRA by failure to disclose or otherwise, the known required total investment for the proposed franchise.

27. During the discussions between IDEAL IMAGE and HETRICKS and CIRA, IDEAL IMAGE provided HETRICKS and CIRA with representations regarding revenues obtained from IDEAL IMAGE centers in Tampa and Sarasota, Florida, and misrepresented to HETRICKS and CIRA that the Atlanta market was the same as the Sarasota and Tampa, Florida, markets and that HETRICKS and CIRA in operating the franchise would generate greater revenue figures than those obtained by IDEAL IMAGE franchises in Tampa and Sarasota, Florida.

28. In reality, the Atlanta market was vastly different from what IDEAL IMAGE represented to HETRICKS and CIRA such that the revenue figures IDEAL IMAGE provided HETRICKS and CIRA were misleading and false.

29. IDEAL IMAGE misrepresented to HETRICKS and CIRA the level of competition that an IDEAL IMAGE center would encounter in the Atlanta market, thereby seriously overstating and misrepresenting the prospects for success in that market, and seriously underestimating and understating the costs necessary to establish market presence in the Atlanta market.

30. HETRICKS formed CIRA to operate the franchise.

31. IDEAL IMAGE's misrepresentations to HETRICKS and CIRA were the proximate cause of the damages of CIRA.

32. Plaintiff, CIRA, has been required to retain the services of the undersigned counsel to bring this action and are entitled to an award of a reasonable attorneys' fee pursuant to Section 817.416(3), Florida Statutes.

WHEREFORE, Plaintiff, CIRA, demands judgment against defendant for its damages, plus pre-judgment interest, a reasonable attorneys fee, court costs and such other and further relief as the Court may deem just and proper.

**COUNT II**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(CIRA)**

33. Paragraphs 1 through 21 are realleged and incorporated by reference.

34. This is an action by CIRA against IDEAL IMAGE for violation of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 *et. seq.*, Florida Statutes ("FDUTPA").

35. At all times material to this action, CIRA was a person under Section 501.211, Florida Statutes.

36. Section 501.203(3), Florida Statutes., provides that violations of the rules promulgated under the Federal Trade Commission Act are violations of FDUTPA. The Federal Trade Commission promulgated the FTC Franchise Rule, 16 C.F.R. § 436.1 *et. seq.* (1979), under the Federal Trade Commission Act. Therefore, violation of the FTC Franchise Rule constitutes a violation of FDUTPA.

37. IDEAL IMAGE is a franchisor as defined in the FTC Franchise Rule, 16 C.F.R. § 436.2(c).

38. In advertising, soliciting and offering its franchise to HETRICKS and CIRA, IDEAL IMAGE violated the FTC Franchise Rule.

39. Without limitation, IDEAL IMAGE violated the FTC Franchise Rule, and consequently FDUPTA, by:

 a. failing to provide HETRICKS and CIRA with the disclosure document at the earlier of their first personal meeting or the time for making disclosures;

 b. failing to provide HETRICKS and CIRA with complete and accurate disclosures regarding the investment required to open and operate an IDEAL IMAGE franchise and the amount of training and support IDEAL IMAGE would provide;

 c. making representations to HETRICKS and CIRA regarding the level of sales and income they could expect if they opened an IDEAL IMAGE Center in Atlanta without complying with requirements of 16 CFR § 436.1(b)(1)-(5),(d); and

 d. making representations to HETRICKS and CIRA regarding the level of sales, income, and gross or net profits for the Tampa and Sarasota, Florida IDEAL IMAGE Centers without complying with the requirements of 16 CFR § 436.1(c)(1)-(5),(d).

40. IDEAL IMAGE's violations of the FTC Franchise Act in dealings with HETRICKS and CIRA, constituted unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices under FDUTPA and Section 5 of the FTC

Act.  Upon information and belief, these acts and practices were committed knowingly, willfully, intentionally, and with actual awareness of the unfairness of the acts.

41. IDEAL IMAGE's acts and practices have caused actual damages to CIRA.

42. Without limiting the foregoing, but for IDEAL IMAGE's failures to disclose, false and misleading representations, and illegal and geographically irrelevant earnings claims, CIRA would not have entered into the franchise agreement.

43. CIRA has been required to retain the services of the undersigned counsel to bring this action and are entitled to an award of a reasonable attorneys' fee pursuant to Section 501.2105, Florida Statutes.

WHEREFORE, Plaintiff, CIRA, demands judgment against defendant for their damages, plus pre-judgment interest, a reasonable attorneys fee, court costs and such other and further relief as the Court may deem just and proper.

## COUNT III
## FRAUDULENT INDUCEMENT
### (HETRICKS)

44. Paragraphs 1 through 21 are realleged and incorporated by reference.

45. This is an action by HETRICKS against IDEAL IMAGE for fraudulent inducement.

46. In February and March of 2004, before CIRA was in existence and while HETRICKS were acting in their individual capacity, IDEAL IMAGE made false representations of material fact to HETRICKS.

47. Without limiting the foregoing, in February and March of 2004, IDEAL IMAGE made representations to the HETRICKS, individually, regarding revenues obtained from IDEAL IMAGE centers in Tampa and Sarasota, Florida, and falsely represented that the Atlanta market

was identical to the Sarasota and Tampa markets.   IDEAL IMAGE also made false representations to HETRICKS about how much revenue they would earn, individually, if they established a franchise in Atlanta.

48. In March and February of 2004, when IDEAL IMAGE made the misrepresentations to induce HETRICKS, individually, to pursue the proposed franchise, HETRICKS were acting in their individual capacity.

49. In reasonable reliance on IDEAL IMAGE's intentional misrepresentations and failures to disclose, HETRICKS, individually, and from individual funds paid $170,000 to IDEAL IMAGE between March 30, 2004, and April 7, 2004.

50. HETRICKS, individually, would not have paid their personal funds directly to IDEAL IMAGE and formed and funded CIRA if IDEAL IMAGE had not made the misrepresentations about the proposed franchise in February and March of 2004.

51. On the day the Franchise Agreement was signed, the HETRICKS, individually, were required to sign a Guaranty Agreement wherein they agreed, *inter alia*, to be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement.  A copy of the Guaranty Agreement signed by the HETRICKS is attached as Exhibit C.

52. HETRICKS, individually, would not have not have paid their personal funds directly to IDEAL IMAGE and signed the Guaranty Agreement if IDEAL IMAGE had not made misrepresentations about the proposed franchise in February and March of 2004.

53. Thereafter, the HETRICKS, as personal guarantors under the Franchise Agreement, personally funded and expended hundreds of thousands of dollars of their personal

funds in an effort to develop and sustain an IDEAL IMAGE franchise through CIRA Corporation.

54. The funds HETRICKS used were not loans to CIRA, but were infusions of their individual money into CIRA. HETRICKS would not have formed and funded CIRA if it were not for IDEAL IMAGE's misrepresentations in February and March of 2004.

55. IDEAL IMAGE knew or should have known the representations made regarding the Atlanta market and the revenues HETRICKS would earn were false.

56. IDEAL IMAGE made the false representations to induce HETRICKS, individually, to move forward with the establishment of the proposed franchise, to pay substantial sums of personal money to IDEAL IMAGE, to form and personally fund a corporation, and to sign the Personal Guaranty.

57. HETRICKS relied on IDEAL IMAGE's false representations in February and March of 2004 and suffered individual damages as a result. Without limiting the foregoing, in reliance on IDEAL IMAGE's false representations, HETRICKS moved forward with the establishment of the proposed franchise, paid individual funds directly to IDEAL IMAGE before CIRA was formed, agreed to form and personally fund CIRA to operate t e franchise, and signed the Guaranty Agreement under which HETRICKS became personally bound by each and every term of the Franchise Agreement. Thereafter, as personal guarantors under the Franchise Agreement, HETRICKS continued to fund CIRA.

58. But for IDEAL IMAGE's false representations before CIRA was formed, HETRICKS would not have moved forward with the establishment of the proposed franchise, paid individual funds directly to IDEAL IMAGE before CIRA was formed, formed and

personally funded CIRA, or signed the Guaranty Agreement under which HETRICKS became personally bound by each and every term of the Franchise Agreement.

59. In addition to the personal guaranty in connection with the Franchise Agreement, HETRICKS were required to personally guaranty CIRA for business expenses such as leased equipment.  As a proximate result of IDEAL IMAGE's misrepresentations, CIRA did not earn as much as represented and defaulted on various obligations, causing HETRICKS to be sued individually on those debts.  A copy of one of these guaranties and a summons to HETRICKS individually is attached as composite Exhibit D.

WHEREFORE, HETRICKS demand judgment against Defendant for their damages, plus pre-judgment interest, court costs and such other and further relief as the Court may deem just and proper.

**COUNT IV**
**FRAUDULENT INDUCEMENT**
**(CIRA)**

60. Paragraphs 1 through 21 are realleged and incorporated by reference.

61. This is an alternative claim for fraudulent inducement by CIRA against IDEAL IMAGE.

62. Although the fraudulent misrepresentations were made to HETRICKS prior to CIRA being formed, this claim is being brought as an alternative.

63. In February and March of 2004, IDEAL IMAGE made false representations of material fact to HETRICKS, which subsequently damaged CIRA.

64. Without limiting the foregoing, in February and March of 2004, IDEAL IMAGE made representations to the HETRICKS regarding revenues obtained from IDEAL IMAGE centers in Tampa and Sarasota, Florida, and falsely represented that the Atlanta market was

identical to the Sarasota and Tampa markets.  IDEAL IMAGE also made false representations to HETRICKS about how much revenue they would earn if they established a franchise in Atlanta.

65. IDEAL IMAGE knew or should have known the representations made regarding the Atlanta market and the revenues HETRICKS would earn were false.

66. IDEAL IMAGE made the false representations to induce HETRICKS to move forward with the establishment of the proposed franchise as CIRA.

67. HETRICKS, on behalf of CIRA, relied on IDEAL IMAGE's false representations in February and March of 2004 and CIRA suffered damages as a result.

68. CIRA suffered damages as a result of IDEAL IMAGE's misrepresentations.

WHEREFORE, CIRA demands judgment against Defendant for its damages, plus pre-judgment interest, court costs and such other and further relief as the Court may deem just and proper.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### (HETRICKS)

69. Paragraphs 1 through 21 are realleged and incorporated by reference.

70. This is an action by HETRICKS against IDEAL IMAGE for negligent misrepresentation.

71. In February and March of 2004, before CIRA was formed and while HETRICKS were acting in their individual capacity, IDEAL IMAGE negligently made false statements of fact to HETRICKS in discussing the establishment of a proposed franchise.

72. Without limiting the foregoing, IDEAL IMAGE made representations regarding revenues obtained from IDEAL IMAGE centers in Tampa and Sarasota, Florida, and falsely represented to HETRICKS that the Atlanta market was identical to the Sarasota and Tampa

markets.   IDEAL IMAGE also made false representations to HETRICKS about how much revenue they would earn, individually, if they established a franchise in Atlanta.

73. In March and February of 2004, when IDEAL IMAGE made the misrepresentations to induce HETRICKS, individually, to pursue the proposed franchise, HETRICKS were acting in their individual capacity.

74. In reasonable reliance on IDEAL IMAGE's intentional misrepresentations and failures to disclose, HETRICKS, individually, and from individual funds paid $170,000 to IDEAL IMAGE between March 30, 2004, and April 7, 2004.

75. HETRICKS, individually, would not have paid their personal funds directly to IDEAL IMAGE and formed and funded CIRA if IDEAL IMAGE had not made the misrepresentations about the proposed franchise in February and March of 2004.

76. On the day the Franchise Agreement was signed, the HETRICKS, individually, were required to sign a Guaranty Agreement wherein they agreed, *inter alia*, to be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement.  A copy of the Guaranty Agreement signed by the HETRICKS is attached as Exhibit C.

77. HETRICKS, individually, would not have not have paid their personal funds directly to IDEAL IMAGE and signed the Guaranty Agreement if IDEAL IMAGE had not made misrepresentations about the proposed franchise in February and March of 2004.

78. Thereafter, the HETRICKS, as personal guarantors under the Franchise Agreement, personally funded and expended hundreds of thousands of dollars of their personal funds in an effort to develop and sustain an IDEAL IMAGE franchise through CIRA Corporation.

79. The funds HETRICKS used were not loans to CIRA, but were infusions of their individual money into CIRA.  HETRICKS would not have formed and funded CIRA if it were not for IDEAL IMAGE's misrepresentations in February and March of 2004.

80. IDEAL IMAGE had no basis for these statements, and failed to ascertain the truth of the statements at the time they were made in February and March of 2004.

81. IDEAL IMAGE made the statements in February and March of 2004 for the purpose of inducing HETRICKS, individually, to move forward with the establishment of the proposed franchise, to pay substantial sums of personal money to IDEAL IMAGE, to form and fund a corporation, and to sign the Personal Guaranty.

82. HETRICKS relied on IDEAL IMAGE's negligent representations in February and March of 2004 and suffered individual damages as a result.  Without limiting the foregoing, in reliance on IDEAL IMAGE's false representations, HETRICKS, individually, moved forward with the establishment of the proposed franchise, paid individual funds directly to IDEAL IMAGE before CIRA was formed, formed and personally funded CIRA to operate the franchise, and signed the Guaranty Agreement under which HETRICKS became personally bound by each and every term of the Franchise Agreement.  Thereafter, as personal guarantors, HETRICKS continued to fund CIRA.

83. But for IDEAL IMAGE's negligent misrepresentations in February and March of 2004, HETRICKS would not have moved forward with the establishment of the proposed franchise, paid individual funds directly to IDEAL IMAGE before CIRA was formed, formed and personally funded CIRA, or signed the Guaranty Agreement under which HETRICKS became personally bound by each and every term of the Franchise Agreement.

84. In addition to the personal guaranty in connection with the Franchise Agreement, HETRICKS were required to personally guaranty CIRA for business expenses such as leased equipment.  As a proximate result of IDEAL IMAGE's misrepresentations, CIRA did not earn as much as represented and defaulted on various obligations, causing HETRICKS to be sued individually on those debts.  A copy of one of these guaranties and a summons to HETRICKS individually is attached as composite Exhibit D.

WHEREFORE, HETRICKS demand judgment against Defendant for their damages, plus pre-judgment interest, court costs and such other and further relief as the Court may deem just and proper.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
### (CIRA)

85. Paragraphs 1 through 21 are realleged and incorporated by reference.

86. This is an alternative claim for negligent misrepresentation by CIRA against IDEAL IMAGE.

87. In February and March of 2004, IDEAL IMAGE negligently made false statements of fact to HETRICKS in discussing the establishment of a proposed franchise.

88. Without limiting the foregoing, IDEAL IMAGE made representations regarding revenues obtained from IDEAL IMAGE centers in Tampa and Sarasota, Florida, and falsely represented to HETRICKS that the Atlanta market was identical to the Sarasota and Tampa markets.  IDEAL IMAGE also made false representations to HETRICKS about how much revenue they would earn if they established a franchise in Atlanta as CIRA.

89. IDEAL IMAGE had no basis for these statements, and failed to ascertain the truth of the statements at the time they were made in February and March of 2004.

90. IDEAL IMAGE made the statements in February and March of 2004 for the purpose of inducing HETRICKS to move forward with the establishment of the proposed franchise as CIRA.

91. CIRA suffered damages as a proximate result of IDEAL IMAGE's misrepresentations.

WHEREFORE, CIRA demands judgment against Defendant for its damages, plus pre-judgment interest, court costs and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2008, a copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Ronald Sturgis Holliday, Esq., DLA Piper, 101 East Kennedy Blvd., Suite 2000, Tampa, Florida 33602-5149 (Ronald.holliday@dlapiper.com) and Steven Douglas Knox, Esq., DLA Piper, 101 East Kennedy Blvd., Suite 2000, Tampa, Florida 33602-5149 (Douglas.knox@dlapiper.com).

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP


By:  /s/ Kimberly L. Sharpe
F. Wallace Pope, Jr.
FBN: #124449
Kimberly L. Sharpe
FBN: #0027010
Post Office Box 1368
Clearwater, Florida  33757
Telephone:  (727) 461-1818
Facsimile (727) 441-8617
Attorneys for Plaintiffs

113269.431853