UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANDY HETRICK, individually,
and CINDY HETRICK, individually,

                Plaintiffs,

                            Case No. 8:07-cv-871-T-33TBM
v.

IDEAL IMAGE DEVELOPMENT
CORPORATION,

                Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to the "Dispositive Motion for Final Summary Judgment" (Doc. # 70), which was filed by Defendant Ideal Image Development Corporation (hereafter "Ideal Image") on September 2, 2008. Plaintiffs Randy Hetrick and Cindy Hetrick (collectively the "Hetricks") filed their "Memorandum of Law in Response to Motion for Summary Judgment" (Doc. # 81), on October 6, 2008. In addition, Ideal Image filed its "Reply Memorandum in Support of Dispositive Motion for Final Summary Judgment" (Doc. # 86) on October 14, 2008. Also before the Court is Ideal Image's "Motion to Strike Plaintiffs' Affidavits Filed

-1-

in Opposition to Defendant's Motion for Summary Judgment"
(Doc. # 85), which was filed on October 10, 2008.   On
October 20, 2008, the Hetricks filed their "Memorandum of
Law in Response to Motion to Strike Affidavits." (Doc. #
88).

For the reasons that follow, this Court denies the
motion for summary judgment and denies the motion to strike.

I.   **Undisputed Facts**

A.   **Acquisition of Ideal Image Franchise**

Randy Hetrick's daughter, Shelley Hetrick-Puckett,
worked for Ideal Image in December, 2003. (Randy Hetrick
Dep. Doc. # 71 at 18:18-23).   Shelley told her father about
the laser hair removal and other services that Ideal Image
performed for its customers and "how well they were doing
. . . [and] how much . . . money that they brought in and
stuff like that." (Id. at 20:3-6).   According to Randy
Hetrick, in February, 2004, Shelley called him on several
occasions to advise him that Ideal Image was "going to start
selling franchises for Ideal Image, and it's a really good
deal, and that they were, you know, making really good
money, and it was a good opportunity." (Id. at 23:11-15).

In February, 2004, John Pace, vice president of

franchise sales for Ideal Image, and Randy Hetrick commenced communications regarding the Hetricks' purchase of an Ideal Image franchise. (<u>Id.</u> at 24:22-24; 25:1-25).   Pace called Randy Hetrick and invited him to visit Ideal Image's Tampa, Florida offices and treatment facility. (<u>Id.</u>)  Randy Hetrick alleges that Pace provided "approximate numbers of what the . . . Tampa clinic had done in the month of December."  (<u>Id.</u> at 26:12-16).

Randy Hetrick traveled from Alabama to Tampa, Florida, where Ideal Image is incorporated, and visited Ideal Image's Tampa, Florida office and treatment facility on February 27, 2004. (<u>Id.</u> at 20:19-24). Randy Hetrick asserts that Pace gave him a tour of the facility, and the visit lasted between one and two hours. (<u>Id.</u> at 21:9-16; 29:12-14). According to Randy Hetrick, Pace told him that a Sarasota, Florida franchise had been open for two weeks, and that "their sales were really good for the first two weeks." (<u>Id.</u> at 30:11-14).   Further, Randy Hetrick asserts that Pace advised him that, in January, 2004, the Tampa, Florida franchise "did about $350,000 in sales, and that their expenses were about [$]150-or 160,000." (<u>Id.</u> at 36:1-3).

During this February 27, 2004, meeting, Randy Hetrick

was provided with Ideal Image's December 31, 2003, Uniform Franchise Offering Circular ("UFOC"), for which he signed a receipt. (Id. at 36:9-15).  Cindy Hetrick did not attend the February 27, 2004, meeting in Tampa, Florida. (Id. at 29:23-24). Randy Hetrick returned home to Alabama with the UFOC, and both he and Cindy Hetrick reviewed it. (Id. at 38:1-7; Cindy Hetrick Dep. Doc. # 72 at 10:1).

The UFOC that the Hetricks reviewed contained the following disclaimer, among others: "[Ideal Image] does not furnish or authorize its salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an Ideal Image Center. Actual sales will vary from center to center, and [Ideal Image] cannot estimate the results of any particular franchise." (Doc. # 40-3 at 11).

In addition, while the UFOC contained an estimate of the initial investment required to open an Ideal Image franchise location, the UFOC also warned that:

> Although we have tried to be as accurate as possible in our estimate of your initial investment, you should review these figures carefully with a skilled business advisor before you decide to purchase the franchise.  The figures above are estimates, and should be viewed as

-4-

such. [Ideal Image] cannot guarantee that you will
not have additional expenses in starting your
business. Your actual costs will depend on such
factors as the location and size of your Ideal
Image Center; how much you follow [Ideal Image's]
recommended methods and procedures; your overall
management and business skill; local economic
conditions; competition; the prevailing local wage
rate; local service provider requirements; and the
amount and effectiveness of your advertising and
promotion.

(Doc. # 40-2 at 18).

Randy Hetrick and his daughter, Shelley, talked on the
phone every day after the February 27, 2004, meeting, and
she encouraged her father to purchase an Ideal Image
franchise. (Randy Hetrick Dep. Doc. # 71 at 41:9-23).

On March 17, 2004, the Hetricks traveled to Tampa,
Florida to visit the Ideal Image office in Tampa, Florida.
(Id. at 43:1-13). According to Randy Hetrick, during the
meeting, Pace generally talked to the Hetricks about opening
a franchise in Atlanta, Georgia because of the good
"demographics" and advised the Hetricks that "Sarasota did
about [$]110,000 in February, with expenses of about
[$]60,000." (Id. at 46:1-20). In his affidavit, Randy
Hetrick states, "During the discussions between [Ideal
Image] and us, [Ideal Image], through John Pace,

-5-

intentionally misrepresented to us by failure to disclose or otherwise, the required total investment to establish and operate an Ideal Image Center such that the actual investment required was approximately 300% more than [Ideal Image]'s representations." (Randy Hetrick Aff. Doc. # 88-2 at ¶ 4).

The Hetricks decided to move forward with the Atlanta franchise and communicated this to Pace. Pace indicated that the closing should take place before March 31, 2004, or else the Hetricks would have to pay more money (because a new UFOC was coming out on March 31, 2004). (Randy Hetrick Dep. Doc. # 71 at 55:4-23). According to Randy Hetrick, Pace advised him that $170,000 was needed for the closing, and Randy Hetrick told Pace: "I need as much time as possible. . . . We're already refinancing our house to get the money." (Id. at 56:9-10; 57:1-3).

The Hetricks traveled to Tampa, Florida on March 29, 2004, and met with Pace. According to Randy Hetrick: "John [Pace] asked us how we were going to set it up, and we just said we were buying it - we were going to purchase the franchise as Randy and Cindy. And John highly - - said 'I

suggest highly that you get a –- form a corporation, so that you protect yourself because of the fact that it's medical treatments, and there could be liability issues." (<u>Id.</u> at 59:1-9). The Hetricks did, in fact, form a corporation: CIRA Corporation, and by the date of the closing, March 30, 2004, the Hetricks had decided upon their respective corporate roles and ownership interests. (<u>Id.</u> at 66:1-25; 67:1-20).

The Hetricks closed the deal on March 30, 2004. They paid $35,000, rather than $170,000 because the Hetricks "were waiting for [their] mortgage to be finalized." (<u>Id.</u> at 75:10-21). During the closing, the Hetricks had an opportunity to review the franchise agreement prior to signing it. (<u>Id.</u> at 74:25; 75:1). Randy Hetrick testified that he did not read the franchise agreement thoroughly before signing it. (<u>Id.</u> at 74:23-24).

## 2. <u>CIRA Corporation and the Franchise Agreement</u>

As noted, the Hetricks formed CIRA to own and operate the Ideal Image franchise. The Hetricks executed the franchise agreement at the March 30, 2004, closing on behalf of CIRA; however, on that date, CIRA was not yet in

existence. It is not disputed that CIRA came into existence after the alleged misrepresentations were made to the Hetricks and after the Hetricks entered into the franchise agreement with Ideal Image.

Nevertheless, when the Hetricks signed the franchise agreement, they signed as the president and secretary of CIRA. (Doc. # 40-6 at 46). Further, when they signed the franchise agreement, they represented to Ideal Image that CIRA was "duly organized and validly exist[ed] under the laws of the state in which it was formed." (Id. at 38).

When they signed the franchise agreement, the Hetricks also acknowledged that CIRA, as franchisee:

> conducted an independent investigation of the business contemplated by [the franchise agreement] and recognizes that it involves business risks making the success of the venture largely dependent upon the business abilities of [CIRA]. Ideal Image Development Corporation expressly disclaims the making of, and [CIRA] acknowledges that it has not received or relied upon, any warranty or guarantee, express or implied, as to the potential volume, profits, or success of the business venture contemplated by [the franchise agreement].

(Id. at 43). In addition, when the Hetricks signed the franchise agreement, they also signed a questionnaire representing to Ideal Image that no Ideal Image

representative either:

    a.    made any statements or promises concerning the revenues, profits, or operating costs of an Ideal Image franchise;

    b.    made any statements or promises concerning the amount of money you may earn in the operating of an Ideal Image franchise; or

    c.    made any statements or promises concerning the likelihood or success that [Plaintiffs] should or might expect to achieve from operating the franchise business.

(Id. at 62-65).  In addition, at the closing, the Hetricks signed a personal guarantee of CIRA's obligations under the franchise agreement.  (Doc. # 40-7).

CIRA's franchise opened bank accounts in July 2004. (Randy Hetrick Dep. Doc. # 71 at 105:4-6).  CIRA's franchise location in Atlanta, Georgia opened on August 23, 2004. (Id. at 89:3-6).  CIRA leased office furniture and laser equipment.  Also in July 2004, through an area-developer agreement, CIRA purchased from Ideal Image, for $45,000, the right to open three additional franchise centers in the Atlanta, Georgia area. (Id. at 90:4-8).  CIRA advertised with billboards and over the radio. (Cindy Hetrick Dep. Doc. # 72 at 31:17-20).

After operating for less than a year, CIRA sold all of its assets to third party I.I. Holdings, LLC ("Holdings").

(<u>Id.</u> at 113:10-25; 114:1-5).    Ideal Image filed the declaration of Robert J. Gesemyer, the manager of TDF, LLC and a director for Holdings. (Gesemyer Decl. Doc. # 44).   In his declaration, Gesemyer explains that CIRA entered into a contribution agreement with Holdings whereby Holdings acquired all of CIRA's assets. (<u>Id.</u> at ¶ 3).   The contribution agreement, attached to Gesemyer's declaration shows that Holdings acquired all of CIRA's assets, properties, good will, and rights related to or utilized in CIRA's Ideal Image franchise business in Atlanta, Georgia, including all "rights, privileges, claims, demands, causes in action . . . and suits that [CIRA] has or may have against third parties in connection with" CIRA's franchise business. (Doc. # 44-2 at ¶ 2.1).

Thereafter, on April 7, 2007, TDF obtained a security interest in the assets by virtue of an assignment of a security agreement from Wachovia Bank, N.A. (Gesemyer Decl. Doc. # 44 at ¶ 4). TDF foreclosed on its security interest on April 9, 2007. (<u>Id.</u> at ¶ 5).   TDF subsequently sold the assets to a subsidiary of Ideal Image. (Doc. # 43 at 3).

Thereafter, the Hetricks were sued by Holdings because

-10-

Holdings questioned "a $50,000 line of credit" drawn on CIRA. (Cindy Hetrick Dep. Doc. # 72 at 42:3-21). Holdings' suit against the Hetricks was dropped. (Id. at 42:4-6). Thereafter, the Hetricks initiated their own suit against Ideal Image.

## II.   Procedural History

### A.   The State Court Complaint

The Hetricks, residents of the State of Alabama, filed suit against Ideal Image, a Florida Corporation, on April 26, 2007, in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "State Court Complaint"). (Doc. ## 1, 2). The Hetricks' State Court Complaint sought damages pursuant to Florida's Franchise Act, Florida Statute Section 817.416. (Doc. # 2). Among other things, the Hetricks alleged in the State Court Complaint that Ideal Image made material misrepresentations to them which induced them to invest their money (approximately $170,000) into Ideal Image's franchise business. (Doc. # 2 at ¶ 16).

On May 21, 2007, Ideal Image removed this case to this Court on the basis of complete diversity of citizenship pursuant to 28 U.S.C. § 1332. On May 24, 2007, Ideal Image

filed its "Motion to Dismiss for Failure to State a Claim,"
seeking dismissal of the State Court Complaint pursuant to
Rule 12(b)(6), Fed. R. Civ. P. (Doc. # 5).   Among other
arguments, Ideal Image asserted that "as individual
shareholders of the corporate franchisee who are not doing
business in Florida, Plaintiffs have no claim or standing
under the Florida Franchise Act." (Doc. # 5 at 2).   Rather
than responding to the motion to dismiss, the Hetricks filed
an amended complaint (the "First Amended Complaint") on June
8, 2007. (Doc. # 6).

**B.   The First Amended Complaint**

The Hetricks' First Amended Complaint contained the
following key allegations (among others):

> During the discussions between Ideal Image and the
> Hetricks, Ideal Image intentionally misrepresented
> to [the] Hetricks, individually, by failure to
> disclose or otherwise, the required total
> investment to establish and operate an Ideal Image
> Center such that the actual investment required
> was approximately 300% more than Ideal Image's
> representations.   During the discussions between
> Ideal Image and [the] Hetricks, individually, all
> of which occurred before April 2, 2004, Ideal
> Image also intentionally misrepresented the
> revenue and prospects for success that [the]
> Hetricks could expect if they opened an Ideal
> Image Center in Atlanta.   In reasonable reliance
> on Ideal Image's intentional misrepresentations
> and failures to disclose, [the] Hetricks,

-12-

individually, and from individual funds paid
$170,000 to Ideal Image between March 30, 2004,
and April 7, 2004. After Ideal Image made the
foregoing misrepresentations, omitted material
facts and after Ideal Image induced plaintiffs to
pay over their personal funds directly to Ideal
Image, Ideal Image insisted that plaintiffs form a
corporation to operate the franchise. The
corporation, known as CIRA Corporation, came into
being on April 2, 2004, **after** the franchise
agreement was signed in Tampa. Thereafter,
plaintiffs personally funded and expended hundreds
of thousands of dollars of their personal funds in
an effort to develop an Ideal Image franchise
through CIRA Corporation.

(Doc. # 6 at ¶¶ 15-18)(emphasis in original).

The First Amended Complaint contained four counts
against Ideal Image. (Doc. # 6). The Hetricks alleged that
Ideal Image violated Florida's Franchise Act (Count I),
violated Florida's Deceptive and Unfair Trade Practices Act
(Count II), fraudulently induced the Hetricks to pursue an
Ideal Image franchise in Atlanta, Georgia (Count III), and
made negligent misrepresentations to the Hetricks in
discussing the establishment of a franchise relationship
(Count IV). (Doc. # 6).

On June 29, 2007, Ideal Image filed its motion to
dismiss the First Amended Complaint. (Doc. # 9). Among
other things, Ideal Image asserted that the Hetricks failed

to state a claim because the Hetricks "allege no injury
distinct from that suffered by the corporate franchise."
(Doc. # 9 at 2). On September 18, 2007, after hearing from
the Hetricks (Doc. # 15), the Court granted Ideal Image's
motion to dismiss and allowed the Hetricks the opportunity
to file a second amended complaint. (Doc. # 23).  The Court
explained its ruling as follows:

> Plaintiffs seek to bring this case in their
> individual capacities.  The amended complaint
> appears to concern business negotiations
> concerning the establishment of a franchise
> agreement by and between the Plaintiffs, CIRA
> Corporation, and/or Defendant.  Plaintiffs allege
> that, prior to entering into the franchise
> agreement, Defendant made numerous
> misrepresentations to them regarding the chances
> of success and failed to disclose material
> information regarding the total investment
> required for the franchise.  Plaintiffs fail to
> allege, however, whether the franchise agreement
> was signed by them in their individual capacities,
> or in the name of CIRA Corporation.  Further
> Plaintiffs have not attached a signed copy of the
> franchise agreement at issue.
>
> In order to bring an action for a violation
> under the Florida Franchise Act, a franchise or
> distributorship must have been sold or
> established.  Plaintiff[s] simply alleged that a
> franchise agreement was signed in Tampa, but [do]
> not allege: (1) whether the agreement was signed
> by Plaintiffs individually, or in the name of CIRA
> Corporation; (2) the date the agreement was
> entered into; or (3) the specific terms of the
> agreement.  Plaintiffs' allegations concerning the

establishment of the franchise at issue are so
vague or ambiguous that it is impossible for this
Court to determine whether Plaintiffs have
standing to bring this action, or if their claims
are derivative of CIRA Corporation's claims.
Accordingly, pursuant to Rule 12(e) of the Federal
Rules of Civil Procedure, the Court finds that
Plaintiffs' First Amended Complaint should be
dismissed without prejudice.

(Doc. # 23 at 2-3).

## C.    **The Second Amended Complaint**

On October 5, 2007, the Hetricks filed the Second
Amended Complaint (Doc. # 25).  The Second Amended Complaint
echoed the prior versions of the complaint, but it also
asserted new factual allegations, such as the allegation
that "[o]n the day the Franchise Agreement was signed, the
Hetricks, individually, were required to sign a Guaranty
Agreement wherein they agreed, inter alia, to be personally
bound by, and personally liable for the breach of, each and
every provision in the Franchise Agreement. . . . Hetricks,
individually, would not have paid their personal funds
directly to Ideal Image and signed the Guaranty Agreement if
Ideal Image had not made misrepresentations about the
proposed franchise in February and March 2004." (Doc. # 25
at ¶¶ 24-25).  The Second Amended Complaint asserted the

-15-

same four counts as the First Amended Complaint: violation of Florida's Franchise Act (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act (Count II), fraudulent inducement (Count III), and negligent misrepresentation (Count IV). (Doc. # 25).

On October 19, 2007, Ideal Image once again sought dismissal of the Hetricks' case. (Doc. # 26). Ideal Image argued, among other things that "[t]he only franchise established for the purposes of this action was established in the name of a corporation that is not a party to this action. Plaintiffs, as shareholders and officers of the corporate franchise, simply lack standing to sue for the claims alleged in the Second Amended Complaint. Plaintiffs' claims against Ideal Image are derivative of the corporate franchisee's claims and should be dismissed accordingly." (Doc. # 26 at 1). The Hetricks submitted a response in opposition to Ideal Image's motion to dismiss (Doc. # 29), and on January 24, 2008, the Court granted the motion in part. After a detailed discussion, the Court dismissed with prejudice the Hetricks' claims under the Florida Franchise Act (Count I) and the Florida Deceptive and Unfair Trade

Practices Act (Count II). (Doc. # 36).  The Court dismissed without prejudice the Hetricks' common law claims for fraudulent inducement (Count III) and negligent misrepresentation (Count IV).  (Doc. # 36).  The court permitted the Hetricks to file a Third Amended Complaint.

**D.   <u>The Third Amended Complaint</u>**

On March 10, 2008, the Hetricks filed the Third Amended Complaint. (Doc. # 40).  The Third Amended Complaint purported to add CIRA as a plaintiff and contained the following counts: violation of Florida's Franchise Act as to CIRA (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act as to CIRA (Count II), fraudulent inducement as to the Hetricks (Count III), fraudulent inducement as to CIRA (Count IV), negligent misrepresentation as to the Hetricks (Count V), and negligent misrepresentation as to CIRA (Count VI). (Doc. # 40).  Along with the Third Amended Complaint, the Hetricks filed their "Motion to Add Party Plaintiff" (Doc. # 41), seeking Court approval for the addition of CIRA as a plaintiff.

Ideal Image opposed the addition of CIRA as a plaintiff

and also sought dismissal of the Third Amended Complaint. (Doc. ## 42, 43). Ideal Image filed the declaration of Robert J. Gesemyer which states that CIRA sold all of its assets, including all causes of action, to a third party in 2005. (Gesemyer Decl. Doc. # 44 at ¶ 3). Further, as to the individual claims asserted by the Hetricks, Ideal Image asserted that all such claims are derivative claims that once belonged to CIRA, but now belong to a successor. The Hetricks responded in defense of the Third Amended Complaint asserting as to their individual claims that "the additional allegations in the Third Amended Complaint show that [the] Hetricks suffered individual harm from misrepresentations made to them individually before CIRA was even in existence. Because CIRA was not in existence at the time of the misrepresentations and the Hetricks were acting in their individual capacity, Ideal Image's arguments that the claims are derivative is fatally flawed." (Doc. # 51 at 1-2).

On April 15, 2008, the Hetricks voluntarily withdrew their motion to add CIRA as a party. (Doc. # 54). With CIRA effectively dropped before it was added, the Court granted Ideal Image's motion to dismiss to the extent that it

dismissed from the Third Amended Complaint those counts asserted by CIRA (counts I, II, IV, and VI). (Doc. # 57). The Court upheld the Hetricks' common law counts (counts III and V) noting: "In [c]ounts III and V of the Third Amended Complaint, Plaintiffs allege, in pertinent part, 'on the day the Franchise Agreement was signed, the Hetricks, individually, were required to sign a Guaranty Agreement wherein they agreed, inter alia, to be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement.' Plaintiffs' allegations sufficiently allege an injury that is distinct from those suffered by CIRA." (Doc. # 57 at 3).

Thus, nearly a year after being served with a complaint, Ideal Image was required to file an answer. Ideal Image filed its answer to the remaining counts of the Third Amended Complaint (counts III and V) on May 12, 2008, and asserted seven affirmative defenses. (Doc. # 58). Notably, Ideal Image asserts as an affirmative defense that "Plaintiffs' alleged reliance on representations made by representatives of Ideal Image was unreasonable and unjustified as a matter of law." (Doc. # 58 at 4). Ideal

Image also asserts as an affirmative defense that "Plaintiffs' own negligence was a legal cause of their alleged injury or damage." (Id. at 5)

## II. Summary Judgment Proceedings

On September 2, 2008, Ideal Image filed its motion for summary judgment. (Doc. # 70). Ideal Image attached to its motion for summary judgment the declaration of Richard D. Mikles, former vice president of Ideal Image. (Doc. # 70-2). In addition, Ideal Image filed the depositions of the Hetricks on September 2, 2008. (Doc. ## 71, 72). On October 6, 2008, the Hetricks filed a response in opposition to Ideal Image's motion for summary judgment and attached thereto the purported affidavit of Randy Hetrick and the declaration of Cindy Hetrick. (Doc. ## 81, 81-2, 81-3). However, Randy Hetrick's "affidavit" was neither signed nor notarized. (Doc. # 81-2). On October 9, 2008, the Hetricks filed the affidavit of Randy Hetrick (both signed and notarized) explaining that the unsigned affidavit was filed inadvertently. (Doc. # 83).

On October 10, 2008, Ideal Image filed its motion to strike both Randy Hetrick's affidavit and Cindy Hetrick's

-20-

declaration. (Doc. # 85).  Thereafter, Ideal Image filed its reply memorandum in support of its motion for summary judgment. (Doc. # 86).  The Hetricks filed their response in opposition to Ideal Image's motion to strike on October 20, 2008.  (Doc. # 88).

### A.   Affidavits Submitted by the Hetricks

Before delving into summary judgment analysis, this Court will address the merits of Ideal Image's motion to strike the affidavit of Randy Hetrick and the declaration of Cindy Hetrick submitted in opposition to Ideal Image's motion for summary judgment.  Ideal Image argues that the Court should strike the affidavit of Randy Hetrick and the declaration of Cindy Hetrick pursuant to Rule 56(e), Fed. R. Civ. Pro., which states in pertinent part, "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).  Furthermore, "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by

affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In essence, Ideal Image seeks to strike Randy Hetrick's affidavit because it is unsigned and unsworn. In addition, Ideal Image argues that Randy Hetrick's affidavit should be stricken because it contains "opinions, legal conclusions, hearsay, and other general conclusions unsubstantiated by specific facts." (Doc. # 85 at 4).

As to Cindy Hetrick, Ideal Image seeks to strike her declaration because it is not a sworn affidavit. Ideal Image further argues that the Court should strike Cindy Hetrick's declaration as a "sham," and that Cindy Hetrick filed the declaration in an effort "to create a genuine issue of material fact to preclude summary judgment." (Id. at 9).

First, this Court denies the motion to strike as to Randy Hetrick. Randy Hetrick has submitted an amended affidavit, and it is both signed and sworn. This Court substitutes the properly executed affidavit (Doc. # 88-2) in place of the deficient affidavit (Doc. # 81-2). Further, this Court has reviewed the properly executed affidavit and

finds that, while it could be construed as containing some legal conclusions, it is based on personal knowledge and is otherwise sufficient to survive the motion to strike. This Court is capable of separating the wheat from the chaff and will not credit improper affidavit statements. Further, this Court will not substitute the legal conclusions drawn by an affiant for its own judicial analysis.

This Court also denies the motion to strike as to Cindy Hetrick's declaration. Ideal Image seeks to strike her declaration because it is a declaration, rather than a Rule 56(e), Fed. R. Civ. P., affidavit. Ideal Image, however, has supported its own motion for summary judgment with a declaration (the declaration of Richard D. Mikles sworn to pursuant to 28 U.S.C. § 1746). Furthermore, Cindy Hetrick has submitted an affidavit in place of her declaration. Her affidavit (Doc. # 88-3) is notarized and is accepted by the Court. This Court substitutes her executed affidavit (Doc. # 88-3) in place of her declaration (Doc. # 81-3).

As to the substance of Cindy Hetrick's affidavit, Ideal Image asserts that it is a sham affidavit because it contains statements that are inconsistent with Cindy

-23-

Hetrick's deposition testimony.  For example, Ideal Image points out that "her statement in the Declaration that she never received the UFOC is clearly contradicted by the deposition testimony where she specifically recalled reviewing the UFOC provided to Mr. Hetrick in early 2004." (Doc. # 85 at 9).

Cindy Hetrick responds that she was not provided with her own copy of the UFOC, but that she reviewed her husband's UFOC, an explanation for the alleged inconsistency that this Court finds to be plausible.  Furthermore, when considering a motion for summary judgment, the Court must consider all proffered evidence and cannot disregard an affidavit simply because it conflicts with a deposition. Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980) (stating that district courts must not resolve factual disputes by weighing conflicting evidence; doing so is within the province of the jury).  However, the Court may strike any affidavit it considers a "sham-affidavit."  Van T. Junkins and Assoc. v. United States Indus. Inc., 736 F.2d 656, 656-57 (11th Cir. 1984).  A sham-affidavit is defined as an affidavit given and submitted for the sole purpose of

creating a factual dispute where it is clear through previous deposition testimony that one does not exist.  Id. at 658.

This Court has reviewed Cindy Hetrick's deposition testimony as well as her affidavit.  While the two documents are not in complete harmony, the discrepancies are minor, and do not render Cindy Hetrick's affidavit a "sham."  As stated in Tippens v. Celotex Corp., 805 F.2d 949 (11th Cir. 1986):

> To allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine at which point in time and with which words the witness (in this case, the affiant) was stating the truth.

Id. at 953-954.  Thus, this Court denies the motion to strike as to the Hetricks' affidavits.

**B.   Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories,

and admissions on file,' designate specific facts showing
that there is a genuine issue for trial." <u>Jeffery v.</u>
<u>Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir.
1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations
or evidence, the non-moving party's evidence is presumed to
be true and all reasonable inferences must be drawn in the
non-moving party's favor. <u>Shotz v. City of Plantation,</u>
<u>Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable
fact finder evaluating the evidence could draw more than one
inference from the facts, and if that inference introduces a
genuine issue of material fact, the court should not grant
summary judgment. <u>Samples ex rel. Samples v. City of</u>
<u>Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta</u>
<u>Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835
F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's
response consists of nothing "more than a repetition of his
conclusional allegations," summary judgment is not only
proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034
(11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

C.   <u>Analysis</u>

1.   <u>Standing</u>

The Hetricks assert that Ideal Image made false representations to them, through Pace, regarding the profitability of an Ideal Image franchise and the resources that would be necessary to open such a franchise. However, before assessing these allegations, this Court must determine whether Florida law permits the Hetricks to recover from Ideal Image under the facts of this case.

Ideal Image asserts that it is entitled to judgment as a matter of law because the Hetricks suffered no direct, individual injuries. Ideal Image asserts that the Hetricks lack standing to recover damages because any injury under the facts of this case is an injury to CIRA, not the Hetricks.

In <u>Hanz v. Belyew</u>, the Eleventh Circuit explained that state law determines whether a cause of action is direct or derivative and that Florida "uses the gravamen test to distinguish between direct and derivative claims." 194 Fed. App'x 897, 900 (11th Cir. 2006). Under the gravamen test, "a stockholder may bring a suit in his own right to redress

-28-

an injury sustained directly by him, and which is separate
and distinct from that sustained by other stockholders." Id.
(quoting Citizens Nat'l Bank v. Peters, 175 So. 2d 54, 56
(Fla. 2d DCA 1965)).  This well accepted principal is also
set forth in Alario v. Miller, 354 So. 2d 925, 927 (Fla. 2d
DCA 1978) ("[A] stockholder may bring a suit in his own
right to redress an injury sustained directly by him, and
which is separate and distinct from that sustained by other
stockholders.  If, however, the injury is primarily against
the corporation, or the stockholders generally, then the
cause of action is in the corporation and the individual's
right to bring it is derived from the corporation.")

     Recognizing that CIRA did not formally exist at the
time that the Hetricks signed the franchise agreement, Ideal
Image also argues that, even though a corporation may not
yet formally exist, "it may sue and be sued as if it existed
if the parties to the contract behaved as if it existed."
Harry Rich Corp. v. Feinberg, 518 So. 2d 377, 379 (Fla. 3d
DCA 1987).

     In response, the Hetricks contend that they suffered
direct, individual injuries because Ideal Image made

-29-

misrepresentations to them before CIRA was created (and before CIRA was even contemplated). Further, the Hetricks argue that "[s]ince a non-existent entity has no rights and cannot be wronged, the claims alleged cannot possibly be derivative of CIRA." (Doc. # 81 at 2).

The Hetricks support their position with <u>K-B Trucking Company v. Riss International Corp.</u>, 763 F.2d 1148 (10th Cir. 1985), a case applying Kansas law. In <u>K-B Trucking</u>, the plaintiff sought damages individually, alleging that the defendants made material misrepresentations to the plaintiff and induced the plaintiff to form a corporation and sign a contraction on behalf of the corporation. <u>Id.</u> at 1154. The alleged misrepresentations occurred in July 1978, and plaintiff formed his corporation on August 2, 1978. <u>Id</u>. As in the present case, the defendants asserted that the plaintiff lacked standing and could not proceed on a derivative theory of liability. <u>Id.</u> However, the <u>K-B Trucking</u> court held that the plaintiff "asserted an interest different than that of the sole shareholder of [the corporation]." <u>Id.</u> The court explained that the plaintiff "contended that defendants made fraudulent

-30-

misrepresentations which induced him to form [the corporation] and enter into the [contracts]" and thus, the plaintiff "had standing to bring the fraudulent misrepresentation claim against defendants." Id.

Although K-B Trucking is not binding upon this Court, it is persuasive authority. This Court agrees with Ideal Image that Florida law allows for a corporation to sue and be sued before it is formally created under the doctrine of corporation by estoppel "if the parties to the contract behaved as if [a corporation] existed." Harry Rich Corp., 518 So. 2d at 379. However, there is no evidence in the record to support the argument that CIRA was in existence or that the Hetricks behaved as though CIRA existed when Ideal Image made the alleged misrepresentations to the Hetricks.

The Hetricks correctly argue, "because the Hetricks were not shareholders at the time of the alleged misrepresentations, Ideal Image was dealing with the Hetricks in their individual capacity and any claims would belong to the Hetricks individually not a corporation that they subsequently formed." (Doc. # 81 at 3).

After due consideration, and applying Florida's

-31-

gravamen test, this Court determines that the Hetricks have standing to pursue damages for alleged misrepresentations made to them prior to the formation of CIRA, which the Hetricks assert induced to invest their savings into an Ideal Image franchise. As stated by the Hetricks, "the duty not to make misrepresentations was owed to the Hetricks, individually" and "the fact that the Hetricks eventually formed a corporation at the behest of Ideal Image, does not provide Ideal Image with a cloak of immunity for misrepresentations made to the Hetricks in their individual capacity before the corporation was formed." (Doc. # 81 at 7).

Thus, it is necessary to move on to the Hetricks' allegations of misrepresentations made by Ideal Image representatives.

### 2.   <u>**Reasonable Reliance**</u>

Ideal Image asserts that "assuming the Hetricks suffered a direct injury in their own right, the claims are bound to fail because the Hetricks' alleged reliance" was not reasonable as a matter of law. (Doc. # 70 at 14). Ideal Image asserts that the Hetricks' alleged reliance on alleged

misrepresentations was unreasonable because "both [Mr. and Mrs. Hetrick] knew that no agent of Ideal Image was authorized to make such representations on its behalf." (Id.).

Ideal Image specifically asserts that Pace was not authorized to make revenue representations to the Hetricks. Ideal Image filed the declaration of Richard D. Mikles, vice president of Ideal Image, which states in pertinent part: "During 2004, Ideal Image did not authorize any of its employees, salespersons or other representatives to furnish to prospective franchisees any oral or written information concerning the actual or potential sales, costs, income, profits, or chances of success of any Ideal Image Centers." (Mikles Decl. Doc. # 70-2 at ¶ 4).

The Hetricks point to a plethora of cases which stand for the proposition that the reasonableness of one's reliance is a question of fact for the jury, not the court, to determine. See, e.g., FCCI Ins. Co. v. Cayce's Excavation, Inc., 901 So. 2d 248, 251 (Fla. 2d DCA 2005) (reversing the grant of summary judgment as follows: "the summary judgment must be reversed because the issue of

whether the reliance was 'reasonable' involves the resolution of factual issues. . . . A summary judgment proceeding is not a substitute for a trial.")

This Court is aware that the Hetricks were presented with a questionnaire, which they executed, stating that no Ideal Image representative either:

> a.    made any statements or promises concerning the revenues, profits, or operating costs of an Ideal Image franchise;
>
> b.    made any statements or promises concerning the amount of money you may earn in the operating of an Ideal Image franchise; or
>
> c.    made any statements or promises concerning the likelihood or success that [Plaintiffs] should or might expect to achieve from operating the franchise business.

(Doc. # 40-6 at 62-65).  However, this disclaimer does not eviscerate the Hetricks' claims.  In Romo v. Amedex Ins. Co., 930 So. 2d  643 (Fla. 3d DCA 2006), the plaintiffs signed an insurance application containing a disclaimer regarding statements from insurance agents. Id. at 646.[1] The trial court dismissed the plaintiffs' complaint with

---

[1]   The disclaimer in Romo stated: "I understand that no agent is authorized to change or modify in any way these contracts or waive one or some of the requirements [sic] this company, or are they able to bind the company by way of promises, representations or information unless placed in writing and form part of an insurance contract or in favor of this application." Id. at 646.

prejudice at the motion to dismiss stage based upon the disclaimer, among other things. The appellate court reversed the dismissal and determined that the issue of whether the plaintiffs' "reliance on the representations allegedly made by [the agent of defendant] was reasonable is an issue of fact" to be decided by a jury, rather than the court. Id. at 652-653.

Specifically, the appellate court reasoned, "A trier of fact could determine that, based upon what [the agent of defendant] told [the plaintiffs] in December of 1995, [the plaintiffs] reasonably relied upon his misrepresentations, despite the disclaimer contained in the 1991 application." Id. at 563. See also Mejia v. Jurich, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) ("The existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement.").

This court also considers Citibank v. Data Lease Fin. Corp., 828 F.2d 686 (11th Cir. 1987), a case in which the

district court's grant of summary judgment was reversed by
the Eleventh Circuit.  The district court determined that a
certain turnover agreement between Citibank and Data Lease
was illegal, and therefore, there was no agency relationship
between Citibank and Data Lease.  The Eleventh Circuit
indicated, "regardless of the legality of the turnover
agreement, however, a relationship did exist between
Citibank and the third party defendants.  The issue
therefore remains whether these individuals were Citibank's
agents."

The Eleventh Circuit explained, "It is well settled
under Florida law that, the existence of an agency
relationship, the nature and extent of the agent's
authority, and the inclusion within the scope of that
authority of a particular act are ordinarily questions to be
determined by the jury or by the trier of facts in
accordance with the evidence adduced in the particular
case."  Id. (citing Fin. Fire & Cas. Co. v. Southmost
Vegetable Coop. Ass'n, 212 So. 2d 69, 71 (Fla. 3d DCA
1968)).  The Eleventh Circuit also warned that an "agency
relationship may be inferred from circumstantial evidence or

-36-

implied from a course of dealings [and] [t]his principal holds true even when the principal and agent deny the relationship." Citibank, 828 F.2d at 691.

In the present case, the entry of summary judgment, as requested by Ideal Image, would invade the province of the jury. The jury, rather than this Court should determine whether the Hetricks' reliance on Pace's statements was reasonable. Upon review of the record before the Court, it appears that a reasonable jury could find that the Hetricks reasonably relied upon Pace's statements concerning profits and expenses, and that these statements induced them to invest their savings into an Ideal Image franchise. Further, a reasonable and fair-minded jury could conclude that the Hetricks' injuries were proximately caused by Ideal Image.

Whether the Hetricks' reliance on Pace's statements was reasonable, whether Pace had apparent authority to make representations on behalf of Ideal Image, and whether Ideal Image's actions proximately caused the Hetricks' damages are genuine issues of material fact that preclude the entry of summary judgment. Accordingly, summary judgment is not

-37-

appropriate, and Ideal Image's motion for summary judgment is due to be denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Ideal Image's "Dispositive Motion for Final Summary Judgment" (Doc. # 70) is **DENIED.**

(2) Defendant Ideal Image's "Motion to Strike Plaintiffs' Affidavits Filed in Opposition to Defendant's Motion for Summary Judgment" (Doc. # 85) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of December 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

-38-