UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANDY and CINDY HETRICK,

        Plaintiffs,

                           Case No.: 8:07-cv-871-T-33TBM

v.

IDEAL IMAGE DEVELOPMENT
CORPORATION,

        Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to cross motions for summary judgment. Both Defendant Ideal Image Development Corporation and Plaintiffs Randy and Cindy Hetrick filed Motions for Summary Judgment on October 15, 2010. (Docs. ## 163, 165). The Hetricks filed their Response in Opposition to Ideal Image's Motion for Summary Judgment on November 5, 2010. (Doc. # 169). Ideal Image filed a timely Reply. (Doc. # 173). Ideal Image filed its Response in Opposition to the Hetricks' Motion for Summary Judgment on October 29, 2010. (Doc. # 166).

In this case, the Hetricks allege that Ideal Image, a franchisor of cosmetic laser hair removal outlets, violated

-1-

the Florida Deceptive and Unfair Trade Practices Act.
According to the Hetricks, Ideal Image made false and
misleading representations and failed to disclose
information regarding the cost of opening an Ideal Image
franchise and its potential profitability, which led to the
loss of the Hetricks' investment in the franchise business.
For the reasons that follow, this Court denies both Motions
for Summary Judgment, except as described below regarding
Ideal Image's affirmative defense B.

## I.  **Factual Background**

### A.  **Acquisition of Ideal Image Franchise**

In February of 2004, the vice president of franchise
sales for Ideal Image, John Pace, and Randy Hetrick
commenced communications regarding the Hetricks' purchase of
an Ideal Image franchise.  (Randy Hetrick Dep. Doc. # 71 at
24:22-24; 25:1-25).  Mr. Pace called Mr. Hetrick and invited
him to visit Ideal Image's Tampa, Florida offices and
treatment facility.  (Id.)  Mr. Hetrick alleges that Mr.
Pace provided "approximate numbers of what the . . . Tampa
clinic had done in the month of December."  (Id. at
26:12-16).

Mr. Hetrick traveled to Tampa, where Ideal Image is

-2-

incorporated, and visited Ideal Image's Tampa office and treatment facility on February 27, 2004. (Id. at 20:19-24). According to Mr. Hetrick, Mr. Pace gave him a tour of the facility, and the visit lasted between one and two hours. (Id. at 21:9-16; 29:12-14). During the visit, Mr. Hetrick recalls that Mr. Pace told him that a Sarasota, Florida franchise had been open for two weeks, and that "their sales were really good for the first two weeks." (Id. at 30:11-14). He also asserts that Mr. Pace advised him that, in January, 2004, the Tampa franchise "did about $350,000 in sales, and that their expenses were about [$]150-or 160,000." (Id. at 36:1-3).

During this meeting, Mr. Hetrick was provided with Ideal Image's December 31, 2003, Uniform Franchise Offering Circular, for which he signed a receipt. (Id. at 36:9-15). Cindy Hetrick, Randy Hetrick's wife, did not attend the meeting in Tampa. (Id. at 29:23-24). When Mr. Hetrick returned home with the Uniform Circular, both he and Ms. Hetrick reviewed it. (Id. at 38:1-7; Cindy Hetrick Dep. Doc. # 72 at 10:1). The Uniform Circular that the Hetricks reviewed contained the following disclaimer, among others: "[Ideal Image] does not furnish or authorize its

-3-

salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an Ideal Image Center. Actual sales will vary from center to center, and [Ideal Image] cannot estimate the results of any particular franchise." (Doc. # 40-3 at 11). In addition, while the Uniform Circular contained an estimate of the initial investment required to open an Ideal Image franchise location, the Uniform Circular also warned that:

> Although we have tried to be as accurate as possible in our estimate of your initial investment, you should review these figures carefully with a skilled business advisor before you decide to purchase the franchise. The figures above are estimates, and should be viewed as such. [Ideal Image] cannot guarantee that you will not have additional expenses in starting your business. Your actual costs will depend on such factors as the location and size of your Ideal Image Center; how much you follow [Ideal Image's] recommended methods and procedures; your overall management and business skill; local economic conditions; competition; the prevailing local wage rate; local service provider requirements; and the amount and effectiveness of your advertising and promotion.

(Doc. # 40-2 at 18).

On March 17, 2004, the Hetricks traveled to Tampa to visit the Ideal Image office in Tampa. (Randy Hetrick Dep. Doc. # 71 at 43:1-13). According to Mr. Hetrick, during

-4-

the meeting, Mr. Pace generally talked to the Hetricks about opening a franchise in Atlanta, Georgia because of the good "demographics" and advised the Hetricks that "Sarasota did about [$]110,000 in February, with expenses of about [$]60,000." (Id. at 46:1-20).  In his affidavit, Mr. Hetrick states, "During the discussions between [Ideal Image] and us, [Ideal Image], through John Pace, intentionally misrepresented to us by failure to disclose or otherwise, the required total investment to establish and operate an Ideal Image Center such that the actual investment required was approximately 300% more than [Ideal Image]'s representations." (Randy Hetrick Aff. Doc. # 88-1 at ¶ 4).

The Hetricks decided to move forward with the Atlanta franchise and communicated this to Mr. Pace.  Mr. Pace indicated that the closing should take place before March 31, 2004, or else the Hetricks would have to pay more money (because a new Uniform Circular was coming out on March 31, 2004). (Randy Hetrick Dep. Doc. # 71 at 55:4-23).  According to Mr. Hetrick, Mr. Pace advised him that $170,000 was needed for the closing, and Mr. Hetrick told Mr. Pace: "I need as much time as possible. . . . We're already refinancing our house to get the money." (Id. at 56:9-10;

-5-

57:1-3).

The Hetricks traveled to Tampa on March 29, 2004, and met with Mr. Pace. According to Mr. Hetrick: "John [Pace] asked us how we were going to set it up, and we just said we were buying it – we were going to purchase the franchise as Randy and Cindy. And John highly – – said 'I suggest highly that you get a –– form a corporation, so that you protect yourself because of the fact that it's medical treatments, and there could be liability issues." (Id. at 59:1-9). The Hetricks did, in fact, form a corporation: CIRA Corporation, and by the date of the closing, March 30, 2004, the Hetricks had decided upon their respective corporate roles and ownership interests. (Id. at 66:1-25; 67:1-20).

The Hetricks closed the deal on March 30, 2004. They paid $35,000, rather than $170,000, because the Hetricks "were waiting for [their] mortgage to be finalized." (Id. at 75:10-21). During the closing, the Hetricks had an opportunity to review the franchise agreement prior to signing it. (Id. at 74:25; 75:1). Mr. Hetrick testified that he did not read the franchise agreement thoroughly before signing it. (Id. at 74:23-24).

**B.    CIRA Corporation and the Franchise Agreement**

As noted, the Hetricks formed CIRA to own and operate the Ideal Image franchise.   The Hetricks executed the franchise agreement at the March 30, 2004, closing on behalf of CIRA; however, on that date, CIRA was not yet in existence.   It is not disputed that CIRA came into existence after the alleged misrepresentations were made to the Hetricks and after the Hetricks entered into the franchise agreement with Ideal Image.

Nevertheless, when the Hetricks signed the franchise agreement, they signed as the president and secretary of CIRA. (Doc. # 40-6 at 46). Additionally, when they signed the franchise agreement, they represented to Ideal Image that CIRA was "duly organized and validly exist[ed] under the laws of the state in which it was formed." (Id. at 38).

When they signed the franchise agreement, the Hetricks also acknowledged that CIRA, as franchisee:

> conducted an independent investigation of the business contemplated by [the franchise agreement] and recognizes that it involves business risks making the success of the venture largely dependent upon the business abilities of [CIRA]. Ideal Image Development Corporation expressly disclaims the making of, and [CIRA] acknowledges that it has not received or relied upon, any

> warranty or guarantee, express or implied, as to the potential volume, profits, or success of the business venture contemplated by [the franchise agreement].

(<u>Id.</u> at 43). In addition, when the Hetricks signed the franchise agreement, they also signed a questionnaire representing to Ideal Image that no Ideal Image representative either:

> a. made any statements or promises concerning the revenues, profits, or operating costs of an Ideal Image franchise;
> b. made any statements or promises concerning the amount of money you may earn in the operating of an Ideal Image franchise; or
> c. made any statements or promises concerning the likelihood or success that [Plaintiffs] should or might expect to achieve from operating the franchise business.

(<u>Id.</u> at 62-65). In addition, at the closing, the Hetricks signed a personal guarantee of CIRA's obligations under the franchise agreement. (Doc. # 40-7).

CIRA's franchise opened bank accounts in July 2004. (Randy Hetrick Dep. Doc. # 71 at 105:4-6). CIRA's franchise location in Atlanta, Georgia opened on August 23, 2004. (<u>Id.</u> at 89:3-6). CIRA leased office furniture and laser equipment. Also in July 2004, through an area-developer agreement, CIRA purchased from Ideal Image the right to open

-8-

three additional franchise centers in the Atlanta, Georgia area for $45,000. (<u>Id.</u> at 90:4-8).   CIRA advertised with billboards and over the radio. (Cindy Hetrick Dep. Doc. # 72 at 31:17-20).

After operating for less than a year, CIRA sold all of its assets to third party I.I. Holdings, LLC.   (<u>Id.</u> at 113:10-25; 114:1-5).   Ideal Image filed the declaration of Robert J. Gesemyer, the manager of TDF, LLC  and a director for I.I. Holdings. (Gesemyer Decl. Doc. # 44).   In his declaration, Mr. Gesemyer explained that CIRA entered into a contribution agreement with I.I. Holdings whereby I.I. Holdings acquired all of CIRA's assets. (<u>Id.</u> at ¶ 3).   The contribution agreement, attached to Gesemyer's declaration, shows that I.I. Holdings acquired all of CIRA's assets, properties, good will, and rights related to or utilized in CIRA's Ideal Image franchise business in Atlanta, Georgia, including all "rights, privileges, claims, demands, causes in action . . . and suits that [CIRA] has or may have against third parties in connection with" CIRA's franchise business.  (Doc. # 44-2 at ¶ 2.1).

Thereafter, on April 7, 2007, TDF, LLC obtained a security interest in the assets by virtue of an assignment

of a security agreement from Wachovia Bank, N.A. (Gesemyer
Decl. Doc. # 44 at ¶ 4).  TDF, LLC foreclosed on its
security interest on April 9, 2007, and subsequently sold
the assets to a subsidiary of Ideal Image.  (Id. at ¶ 5;
Doc. # 43 at 3).

Thereafter, the Hetricks were sued by I.I. Holdings
because I.I. Holdings questioned "a $50,000 line of credit"
drawn on CIRA. (Cindy Hetrick Dep. Doc. # 72 at 42:3-21).
I.I. Holdings' suit against the Hetricks was dropped. (Id.
at 42:4-6).  Thereafter, the Hetricks initiated this matter
against Ideal Image.

## II.  <u>Procedural History</u>

### A.    <u>The State Court Complaint</u>

The Hetricks, residents of the State of Alabama, filed
suit against Ideal Image, a Florida Corporation, on April
26, 2007, in the Thirteenth Judicial Circuit in and for
Hillsborough County, Florida. (Doc. ## 1, 2).  The Hetricks'
State Court Complaint sought damages pursuant to Florida's
Franchise Act, Florida Statute Section 817.416.  (Doc. # 2).
Among other things, the Hetricks alleged in the State Court
Complaint that Ideal Image made material misrepresentations
to them which induced them to invest their money

-10-

(approximately $170,000) into Ideal Image's franchise business. (Doc. # 2 at ¶ 16).

On May 21, 2007, Ideal Image removed the suit to this Court on the basis of complete diversity of citizenship pursuant to 28 U.S.C. § 1332. On May 24, 2007, Ideal Image filed its "Motion to Dismiss for Failure to State a Claim," seeking dismissal of the State Court Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Doc. # 5). Among other arguments, Ideal Image asserted that "as individual shareholders of the corporate franchisee who are not doing business in Florida, Plaintiffs have no claim or standing under the Florida Franchise Act." (Doc. # 5 at 2). Rather than responding to the motion to dismiss, the Hetricks filed an amended complaint (the "First Amended Complaint") on June 8, 2007. (Doc. # 6).

**B.   The First Amended Complaint**

The Hetricks' First Amended Complaint contained the following key allegations (among others):

> During the discussions between Ideal Image and the Hetricks, Ideal Image intentionally misrepresented to [the] Hetricks, individually, by failure to disclose or otherwise, the required total investment to establish and operate an Ideal Image Center such that the actual investment required was approximately 300% more than Ideal Image's representations. During the discussions between

-11-

Ideal Image and [the] Hetricks, individually, all of which occurred before April 2, 2004, Ideal Image also intentionally misrepresented the revenue and prospects for success that [the] Hetricks could expect if they opened an Ideal Image Center in Atlanta. In reasonable reliance on Ideal Image's intentional misrepresentations and failures to disclose, [the] Hetricks, individually, and from individual funds paid $170,000 to Ideal Image between March 30, 2004, and April 7, 2004. After Ideal Image made the foregoing misrepresentations, omitted material facts and after Ideal Image induced plaintiffs to pay over their personal funds directly to Ideal Image, Ideal Image insisted that plaintiffs form a corporation to operate the franchise. The corporation, known as CIRA Corporation, came into being on April 2, 2004, **after** the franchise agreement was signed in Tampa. Thereafter, plaintiffs personally funded and expended hundreds of thousands of dollars of their personal funds in an effort to develop an Ideal Image franchise through CIRA Corporation.

(Doc. # 6 at ¶¶ 15-18)(emphasis in original).

The First Amended Complaint contained four counts against Ideal Image. (Doc. # 6). The Hetricks alleged that Ideal Image violated Florida's Franchise Act (Count I), violated Florida's Deceptive and Unfair Trade Practices Act (Count II), fraudulently induced the Hetricks to pursue an Ideal Image franchise in Atlanta, Georgia (Count III), and made negligent misrepresentations to the Hetricks in discussing the establishment of a franchise relationship (Count IV). (Doc. # 6).

On June 29, 2007, Ideal Image filed its motion to dismiss the First Amended Complaint. (Doc. # 9). Among other things, Ideal Image asserted that the Hetricks failed to state a claim because the Hetricks "allege no injury distinct from that suffered by the corporate franchise." (Doc. # 9 at 2). On September 18, 2007, after hearing from the Hetricks (Doc. # 15), the Court granted Ideal Image's motion to dismiss and allowed the Hetricks the opportunity to file a second amended complaint. (Doc. # 23). The Court explained its ruling as follows:

> Plaintiffs seek to bring this case in their individual capacities. The amended complaint appears to concern business negotiations concerning the establishment of a franchise agreement by and between the Plaintiffs, CIRA Corporation, and/or Defendant. Plaintiffs allege that, prior to entering into the franchise agreement, Defendant made numerous misrepresentations to them regarding the chances of success and failed to disclose material information regarding the total investment required for the franchise. Plaintiffs fail to allege, however, whether the franchise agreement was signed by them in their individual capacities, or in the name of CIRA Corporation. Further Plaintiffs have not attached a signed copy of the franchise agreement at issue.
>
> In order to bring an action for a violation under the Florida Franchise Act, a franchise or distributorship must have been sold or established. Plaintiff[s] simply alleged that a franchise agreement was signed in Tampa, but [do] not allege: (1) whether the agreement was signed

-13-

by Plaintiffs individually, or in the name of CIRA
Corporation; (2) the date the agreement was
entered into; or (3) the specific terms of the
agreement. Plaintiffs' allegations concerning the
establishment of the franchise at issue are so
vague or ambiguous that it is impossible for this
Court to determine whether Plaintiffs have
standing to bring this action, or if their claims
are derivative of CIRA Corporation's claims.
Accordingly, pursuant to Rule 12(e) of the Federal
Rules of Civil Procedure, the Court finds that
Plaintiffs' First Amended Complaint should be
dismissed without prejudice.

(Doc. # 23 at 2-3).

**C.    The Second Amended Complaint**

On October 5, 2007, the Hetricks filed the Second

Amended Complaint. (Doc. # 25). The Second Amended

Complaint echoed the prior versions of the complaint, but it

also asserted new factual allegations, such as the

allegation that "[o]n the day the Franchise Agreement was

signed, the Hetricks, individually, were required to sign a

Guaranty Agreement wherein they agreed, inter alia, to be

personally bound by, and personally liable for the breach

of, each and every provision in the Franchise Agreement. . .

. [The] Hetricks, individually, would not have paid their

personal funds directly to Ideal Image and signed the

Guaranty Agreement if Ideal Image had not made

misrepresentations about the proposed franchise in February

and March 2004." (Doc. # 25 at ¶¶ 24-25). The Second
Amended Complaint asserted the same four counts as the First
Amended Complaint: violation of Florida's Franchise Act
(Count I), violation of Florida's Deceptive and Unfair Trade
Practices Act (Count II), fraudulent inducement (Count III),
and negligent misrepresentation (Count IV). (Doc. # 25).

On October 19, 2007, Ideal Image once again sought
dismissal of the Hetricks' case. (Doc. # 26). Ideal Image
argued, among other things that "[t]he only franchise
established for the purposes of this action was established
in the name of a corporation that is not a party to this
action. [The Hetricks], as shareholders and officers of the
corporate franchise, simply lack standing to sue for the
claims alleged in the Second Amended Complaint. [The
Hetricks'] claims against Ideal Image are derivative of the
corporate franchisee's claims and should be dismissed
accordingly." (Doc. # 26 at 1). The Hetricks submitted a
response in opposition to Ideal Image's motion to dismiss
(Doc. # 29), and on January 24, 2008, the Court granted the
motion in part. After a detailed discussion, the Court
dismissed with prejudice the Hetricks' claims under the
Florida Franchise Act (Count I) and the Florida Deceptive

-15-

and Unfair Trade Practices Act (Count II). (Doc. # 36).  The Court dismissed without prejudice the Hetricks' common law claims for fraudulent inducement (Count III) and negligent misrepresentation (Count IV).  (Doc. # 36).  The Court permitted the Hetricks to file a Third Amended Complaint.

**D.**   **The Third Amended Complaint**

On March 10, 2008, the Hetricks filed the Third Amended Complaint. (Doc. # 40).  The Third Amended Complaint purported to add CIRA as a plaintiff and contained the following counts: violation of Florida's Franchise Act as to CIRA (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act as to CIRA (Count II), fraudulent inducement as to the Hetricks (Count III), fraudulent inducement as to CIRA (Count IV), negligent misrepresentation as to the Hetricks (Count V), and negligent misrepresentation as to CIRA (Count VI). (Doc. # 40).  Along with the Third Amended Complaint, the Hetricks filed their "Motion to Add Party Plaintiff" (Doc. # 41), seeking Court approval for the addition of CIRA as a plaintiff.

Ideal Image opposed the addition of CIRA as a plaintiff and also sought dismissal of the Third Amended Complaint.

-16-

(Doc. ## 42, 43).   Ideal Image filed the declaration of
Robert J. Gesemyer which stated that CIRA sold all of its
assets, including all causes of action, to a third party in
2005. (Gesemyer Decl. Doc. # 44 at ¶ 3).   As to the
individual claims asserted by the Hetricks, Ideal Image
asserted that all such claims were derivative claims that
once belonged to CIRA, but now belonged to a successor.   The
Hetricks responded in defense of the Third Amended Complaint
asserting as to their individual claims that

> the additional allegations in the Third Amended
> Complaint show that [the] Hetricks suffered
> individual harm from misrepresentations made to
> them individually before CIRA was even in
> existence.  Because CIRA was not in existence at
> the time of the misrepresentations and the
> Hetricks were acting in their individual
> capacity, Ideal Image's arguments that the claims
> are derivative is fatally flawed.

(Doc. # 51 at 1-2).

On April 15, 2008, the Hetricks voluntarily withdrew
their motion to add CIRA as a party. (Doc. # 54).  With CIRA
effectively dropped before it was added, the Court granted
Ideal Image's motion to dismiss to the extent that it
dismissed from the Third Amended Complaint those counts
asserted by CIRA (counts I, II, IV, and VI). (Doc. # 57).
However, the Court upheld the Hetricks' common law counts

-17-

(counts III and V).  (Doc. # 57 at 3).  Ideal Image filed its answer to the remaining counts of the Third Amended Complaint (counts III and V) on May 12, 2008, and asserted seven affirmative defenses. (Doc. # 58).

  **E.** **The First Summary Judgment Proceedings**

  On September 2, 2008, Ideal Image filed its first motion for summary judgment, which the Court denied. (Docs. ## 70, 90).  By that motion, Ideal Image argued that the Hetricks suffered no direct, individual injuries and lacked standing to recover damages because any injury under the facts of the case was an injury to CIRA, rather than an injury to the Hetricks.  In contrast, the Court held that entry of summary judgment would invade the province of the jury, and that a reasonable jury could find that the Hetricks reasonably relied on Mr. Pace's statements concerning franchise expenses and potential profits to induce them to invest their savings into an Ideal Image franchise. (Doc. # 90).  Additionally, the Court opined, a reasonable and fair-minded jury could conclude that the Hetricks' injuries were proximately cause by Ideal Image. (Id.)

**F.   The Trial**

A two-day trial commenced on January 5, 2009. (Docs. ## 122, 123).  As to the alleged misrepresentations, the jury found that: (i) a representative of Ideal Image made statements concerning the revenues that the Hetricks could expect from operating an Ideal Image center; (ii) the Hetricks were not precluded from relying on those statements due to their certifications to Ideal Image at the time their corporation purchased a franchise; and (iii) the representative was authorized by Ideal Image to make such statements. (Doc. # 127).  However, the jury also concluded that no misrepresentations of existing material facts occurred.  (<u>Id.</u>)  A judgment was entered in favor of Ideal Image shortly thereafter and the case was closed.  (Doc. # 129).

**G.   The Appeal**

The Hetricks did not challenge the jury's verdict, but timely appealed the Court's January 24, 2008, Order (Doc. # 36), to the extent that it dismissed with prejudice the Hetricks' claims under the Florida Franchise Act and the Florida Deceptive and Unfair Trade Practices Act.  (Doc. # 138).  The Eleventh Circuit affirmed the Court, save for the

dismissal of the Florida Deceptive and Unfair Trade Practices Act claim, upon which it reversed and remanded for further proceedings. (Doc. # 152 at 3).

### H. The Present Summary Judgment Proceedings

The Florida Deceptive and Unfair Trade Practices Act claim is the only claim remaining in the Hetrick's Complaint. (Doc. # 25). Ideal Image's Answer and Affirmative Defenses also remain operative. (Doc. # 61). Ideal Image filed a Motion for Summary Judgment on October 15, 2010. (Doc. # 163). The Hetricks filed a Motion for Partial Summary Judgment on October 15, 2010, by which they move the Court to grant summary judgment in their favor on the first element of their Florida Deceptive and Unfair Trade Practices Act claim and on certain of Ideal Image's affirmative defenses. (Doc. # 169).

## III. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not

enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v.

-21-

Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

IV.  **Analysis**

   A.   **Ideal Image's Motion**

To establish a Florida Deceptive and Unfair Trade Practices Act claim, the Hetricks must prove three elements: (i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages.  Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007). Ideal Image's Motion for Summary Judgment focuses on the

causation element, asserting that the Hetricks "can point to no evidence that the loss of their investment in 2007" was proximately caused by the statements allegedly made to them by Ideal Images representatives in connection with the sale of the original franchise in 2004.  (Doc. # 163 at 9). Rather, as a matter of law, Ideal Image claims that the Hetricks' loss was independently caused by the failure of I.I. Holdings in 2007.  (Doc. # 163 at 8).

Ideal Image cites <u>General Motors Acceptance Corp. v. Laesser</u>, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) to illustrate the importance of the causation element in the context of a Florida Deceptive and Unfair Trade Practices Act claim.  In <u>General Motors</u>, Mr. Laesser sued General Motors Acceptance Corporation for violations of the Florida Deceptive and Unfair Trade Practices Act based upon statements made by a manager at a car dealership who convinced Mr. Laesser to lease, rather than purchase, his new car.  <u>Id.</u>  At the conclusion of the 3-year lease term, Mr. Laesser brought suit against General Motors, claiming that General Motors was liable because it conducted training seminars for dealership employees wherein the attendees were taught that by using a lease agreement certain financial

disclosures could be omitted.  Id.  The jury returned a verdict for Mr. Laesser.  Id.

On appeal, the court reversed and found that even though the conduct of General Motors through its training courses may have been "reprehensible . . . immoral, unethical, unscrupulous and substantially injurious to consumers," it was not actionable under the Florida Deceptive and Unfair Trade Practices Act.  Id.  "[T]o be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer."  Id.  The court held that no competent evidence had been presented to the jury that Mr. Laesser suffered any loss or damage as a result of General Motor's deceptive training practices.  Id. at 278; see also Himes v. Brown & Co. Sec. Corp., 518 So. 2d 937, 938 (Fla. 3d DCA 1988)(holding that the trial court could justifiably find that the plaintiff did not suffer any actual damages proximately caused by the defendant's alleged violation of Florida's Deceptive and Unfair Trade Practices Act).

The Hetricks, unlike Mr. Laesser, alleged and provided evidence through their affidavits that they would not have invested in an Ideal Image franchise but for the statements

-24-

made by the Ideal Image representative.  Thus, here, unlike _General Motors_, the complaining party has alleged that there is a causal link between the alleged deceptive or unfair conduct and the resulting injury.  As such, the Court finds the _General Motors_ case factually distinguishable.

Additionally, in support of its Motion for Summary Judgment, Ideal Images relies on and incorporates the expert report of Mark Siebert and the Declaration of David Burns. (Docs. ## 163-1; 164).  Both Mr. Siebert and Mr. Burns opine that the Hetricks' financial loss was caused by the ultimate failure of I.I. Holdings, and not by the statements made to the Hetricks.  (Doc. # 163-1 at 13; Doc. # 164 at 5).

The Hetricks' Response paints a different picture. (Doc. # 169).  Ideal Image's argument that the failure of I.I. Holdings was the proximate cause of the Hetricks' injury falls apart, the Hetricks claim, because they suffered an injury _prior_ to the sale between CIRA and I.I. Holdings.  (_Id._ at 4).  At the time of the sale, the Hetricks allege that CIRA was significantly in debt and held virtually no assets.  (_Id._; Doc. # 83-1 at ¶ 38).  The Hetricks characterize the sale between CIRA and I.I. Holdings as a last ditch effort to "mitigate their damages

-25-

and recoup some of the money lost." (Doc. # 169 at 4).  The Hetricks filed identical affidavits in support of their Response, in which they dispute a number of the statements in Mr. Siebert's expert report, and raise a plethora of material factual issues regarding when they suffered damages and the data upon which Mr. Siebert based his conclusions regarding causation. (Docs. ## 169-1; 169-2).

A reasonable fact finder evaluating this evidence could draw more than one inference regarding whether there is a causal link between the Hetricks' injury and the statements made by the representatives of Ideal Image.  This is not a situation "where reasonable minds cannot differ, [such that] proximate cause becomes a question of law." Chipman v. Chonin, 597 So. 2d 363, 364 (Fla. 3d DCA 1992)(citing Vukovich v. Leo, 447 So. 2d 1012, 1013 (Fla. 3d DCA 1984)). The jury, rather than the Court, should determine whether the Hetricks suffered an injury as a result of the statements made by the representatives of Ideal Image. Whether the statements constituted a deceptive act or unfair practice, and whether the Hetricks' injury was caused by those statements, are genuine issues of material fact that preclude the entry of summary judgment.  Accordingly, Ideal

Image's motion for summary judgment is denied.

**B.   The Hetricks' Motion**

Although the two-day trial held on January 5-6, 2009, only addressed the Hetricks' fraud and negligent misrepresentation claims, the Hetricks assert that the jury's findings apply to satisfy an element of their Florida Deceptive and Unfair Trade Practices Act claim such that the Court should grant partial summary judgment in their favor. (Doc. # 165).  Additionally, the Hetricks allege that Ideal Image's affirmative defenses A-D and F were previously raised and disposed of by either the jury's verdict or the appellate court, and thus they seek summary judgment as to those affirmative defenses as well. (<u>Id.</u> at 2).

**1.   Florida Deceptive and Unfair Trade Practices Act claim element**

First, the Hetricks move for summary judgment as to an element of their Florida Deceptive and Unfair Trade Practices Act claim.  There the Hetricks allege that the jury found that "an Ideal Image representative made statements concerning the revenues that could be expected from operating an Ideal Image center." (<u>Id.</u> at 3; Doc. # 127).  Citing Federal Trade Commission Franchise Rule 16

-27-

C.F.R. § 436.9, incorporated into the Florida Deceptive and Unfair Trade Practices Act pursuant to Fla. Stat. § 501.203(3), the Hetricks argue that "it is a deceptive act or unfair trade practice simply to utter statements concerning revenues, whether those statements are true or false." (Doc. # 165 at 3).  Therefore, the Hetricks assert, the jury's finding that an Ideal Image representative made statements to the Hetricks concerning revenue is enough to satisfy the first element of their Florida Deceptive and Unfair Trade Practices Act claim.  Bookworld Trade, 532 F. Supp. 2d at 1364.

In contrast, Ideal Image submits that the Hetricks improperly presume a per se violation, and fail to proffer evidence that a technical violation of the Franchise Rules would have misled a consumer acting reasonably in the same circumstances, a requirement Ideal Images alleges the Eleventh Circuit requires.  (Doc. # 166).  Because the Court agrees that liability under the Franchise Rules, and thus the Florida Deceptive and Unfair Trade Practices Act, requires more than a mere technical violation, the Court denies the Hetricks' Motion for Summary Judgment.  As such, an analysis as to procedurally propriety of granting summary

judgment solely as to an element of a claim is not required.

In pertinent part, Federal Trade Commission Franchise Rule 16 C.F.R. § 436.9 states:

> [i]t is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act for any franchise seller covered by part 436 to: (c) [d]isseminate any financial performance representations to prospective franchisees unless the franchisor has a reasonable basis and written substantiation for the representation at the time the representation is made, and the representation is included in Item 19 (§ 436.5(s)) of the franchisor's disclosure document.

16 C.F.R. § 436.9.

However, in the Eleventh Circuit, a party "must [also] prove that the alleged [deceptive or unfair] practice was likely to deceive a consumer acting reasonably in the same circumstances." Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 Fed. App'x 565, 567 (11th Cir. 2009) (quoting State, Office of Att'y Gen. v. Commerce Comm. Leasing, LLC, 946 So. 2d 1253, 128 (Fla. 1st DCA 2007) (internal quotations omitted); Zlotnick v. Premier Sales Grp., Inc., 480 F. 3d 1281, 1284 (11th Cir. 2007) (holding that deception under the Florida Deceptive and Unfair Trade Practices Act "occurs if there is a representation . . . that is likely to mislead the consumer acting reasonably in

the circumstances"); <u>F.T.C. v. Atlantex Assocs.</u>, No. 87-0045-CIV, 1987 WL 20384, at *9 (S.D. Fla. 1987), <u>aff'd</u>, 872 F.2d 966 (11th Cir. 1989)("[t]o establish a deceptive act or practice, it is necessary to show . . . that consumers who are misled were acting reasonably under the circumstances").

Here, while the jury found that "prior to the sale of a franchise, a representative of Ideal Image made statements concerning the revenues that could be expected from operating an Ideal Image center" (Doc. # 127 at 1), the jury did not consider whether the representations were likely to mislead a consumer acting reasonably under the circumstances. (<u>See</u> Doc. # 127). A genuine issue of material fact remains as to whether the representations would likely mislead a consumer acting reasonably under the circumstances. Therefore, the Hetricks' motion as to the first element of their Florida Deceptive and Unfair Trade Practices Act claim is denied.

### 2. **Affirmative Defenses**

Ideal Image has raised six affirmative defenses (A through F) relevant to the Hetricks' Florida Deceptive and Unfair Trade Practices Act claim. The Hetricks challenge all of these affirmative defenses, except for E. (Doc. #

165 at 7 - 8).  Ideal Image retracts affirmative defenses C
and F.  (Doc. # 166 at 8, 9).  Thus, the Court is left to
analyze affirmative defenses A, B, and D.

In affirmative defense A, Ideal Image asserts that
"[The Hetricks'] claim is barred because they suffered no
loss in their individual capacities as the result of a
violation of the Florida Deceptive and Unfair Trade
Practices Act."  Characterizing this defense as an attempt
to relitigate the issue of their standing, the Hetricks
argue that the Eleventh Circuit already held that they have
standing to bring a Florida Deceptive and Unfair Trade
Practices Act claim. (Doc. # 165 at 7).  To the contrary,
Ideal Image asserts that by this affirmative defense it
argues that the Hetricks personally suffered no actual
damage as a result of any representations made by Ideal
Image.  Whether the Hetricks personally suffered actual
damages is still at issue and has not been previously
decided.  As such, the Hetricks' motion as to affirmative
defense A is denied.

Next, the Hetricks move for summary judgment as to
Ideal Image's affirmative defense B, which states as
follows:  "[The Hetricks'] alleged reliance on

representations made by representatives of Ideal Image was unreasonable and unjustified as a matter of law. Contemporaneously with signing the Franchise Agreement on behalf of CIRA Corporation, [the Hetricks] executed Franchise Compliance Questionnaires, certifying that no agent of Ideal Image had 'made any statements or promises concerning the revenues, profits or operating costs of an Ideal Image franchise,' 'concerning the amount of money [the Hetricks] may earn in the operating of an Ideal Image franchise,' or concerning 'the likelihood of success that [the Hetricks] should or might expect to achieve from operating an Ideal Image franchise.'" According to the Hetricks, this defense was already raised in the trial and the jury found that the Hetricks were not precluded from relying on the alleged statements, despite their execution of the Franchise Compliance Questionnaire.  (Doc. # 165 at 7).  In contrast, Ideal Image argues that "the jury never reached the related questions of causation and reasonable reliance, which were questions no. 7 and 8 on the verdict form." (Doc. # 166 at 7).

Contrary to Ideal Image's argument, a review of the verdict form shows that the jury found that the Hetricks

were not precluded from claiming reliance on the verbal statements of the Ideal Image representative due to their certifications to Ideal Image at the time their corporation purchased a franchise. (Doc. # 127 at 1). The Court finds that Ideal Image's affirmative defense B attempts to relitigate this issue, which is one the jury has already decided. Ideal Image is collaterally estopped from raising the same issue again by way of this affirmative defense. Accordingly, the Court grants the Hetricks' motion as to affirmative defense B.

Finally, the Hetricks seek summary judgment on affirmative defense D, which states: "[The Hetricks'] claims are barred, in whole or in part, by conduct constituting waiver and estoppel. Having knowledge of the factual matters alleged in the Second Amended Complaint, [the Hetricks] executed an Area Development Agreement and personal guarantees on behalf of CIRA." Affirmative defense D fails as a matter of law, the Hetricks assert, because the facts of the defense do not relate to any of the three Florida Deceptive and Unfair Trade Practices Act elements. (Doc. # 165 at 7). On the other hand, Ideal Image argues that the "Hetricks did personally cause CIRA to execute the

-33-

Area Development Agreement with Ideal Image, while knowing of the alleged deceptive acts." (Doc. # 166 at 8). In light of the inconclusive and conflicting evidence as to this affirmative defense, the Court denies the Hetricks' motion as to affirmative defense D.

## V.   Conclusion

For the foregoing reasons, Ideal Image Development Corporation's Motion for Final Summary Judgment (Doc. # 163) is denied. Additionally, Randy and Cindy Hetrick's Motion for Partial Summary Judgment as to the first element of their Florida Deceptive and Unfair Trade Practices Act claim (Doc. # 165) is denied. By agreement of Ideal Image, its affirmative defenses C and F are withdrawn. The Court grants the Hetricks' Motion for Summary Judgment as to Ideal Image's affirmative defense B. As a result, only affirmative defenses A, D, and E remain.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Ideal Image Development Corporation's Motion for Final Summary Judgment (Doc. # 163) is **DENIED.**

(2)   Randy and Cindy Hetrick's Motion for Partial Summary Judgment as to the first element of their Florida

-34-

Deceptive and Unfair Trade Practices Act claim (Doc. # 165) is **DENIED**.

(3)   Ideal Image's affirmative defenses C and F are withdrawn.

(4)   Randy and Cindy Hetrick's Motion for Partial Summary Judgment as to Ideal Image's affirmative defense B is **GRANTED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>21st</u> day of December 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel and Parties of Record